150 408
58a 248
150 408
62a 263
62a 593
150 408
169 328
150 408
184 475
150 408
192 10478
192 11479
150 408
198 15 82
150 408
104a 4356
e104a8357
150 408
e107a9247
107a 9248
108a 4299
109a 4607
e109a4608
150 408
d208 4570
d208 15573
208 2574
208 18576
150 408
113a 8199

# JOHN T. LESTER

*v.*

# THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa January 21, 1890—Rehearing denied June 19, 1894.*

1. CONSTITUTIONAL LAW—*seizure of party's books and papers.* While an order for the production of a party's books on the trial, to be used as evidence, in proper cases and upon proper showing, is not an unreasonable seizure of such books, an order of court by which they are taken from his custody and committed to that of a third person, for an indefinite period of time, for an inspection, generally, into all his affairs by the opposite party and his counsel, with leave to take copies of the entries therein, is unwarranted by the law, and is a palpable violation of the constitutional right of a party to be secure against unreasonable seizure of his papers and effects.

2. STATUTE CONSTRUED—*relating to production of papers and books.* The purpose and design of section 9, chapter 51, of the Revised Statutes, are to furnish to a party litigant a speedy and summary mode by which a party, under the order of the court, may obtain written evidence pertinent to the issue, which is in the possession and control of his adversary, and thus obviate the necessity of a bill of discovery seeking the same end.

3. This section contemplates the production of evidence on the trial of the cause which the party applying therefor is entitled to introduce in support of his case, and which the other party withholds. A defendant is not required to disclose matters of evidence relied upon in the defense, and thus inform the plaintiff of his case further than the pleadings show. Matters purely of defense are the property rights of the defendant, which he may disclose or not upon the trial.

4. Under the statute the court has power to compel the production of the books of a party, to be used in evidence on the trial by his adversary, upon proper showing that they contain entries tending to prove the issues; but the statute can not be construed as giving the court power and authority to take the books and papers of the party and impound them with an officer of the court for inspection or examination, out of the presence of the court. The statute does not give the right to compel the submission of the books of a party to general inspection or examination for fishing purposes, or with a view to find evidence to be used in other suits or prosecutions.

5. PRACTICE—*oyer of instrument sued on.* At common law, in suits upon sealed instruments of which it was necessary to make profert,

the defendant might demand oyer, and thereby have an inspection of the instrument sued on. But this was limited to contracts or other instruments under seal. By section 20, chapter 110, of the statute relating to practice, this rule is extended to all instruments declared on, whether under seal or not.

6. SAME—*inspection of instrument sued on.* Oyer or inspection is confined to instruments in writing declared upon, and constituting the cause of action, or set up in a plea by way of defense. It does not apply where the deed is stated as mere inducement. The common law also furnished another mode which was not confined to instruments under seal, which was, by application, pending the action, to the equitable jurisdiction of the court for an order to inspect.

7. The order for inspection was obtainable only in a very limited number of cases, as, where one party could be considered as holding a document as agent or trustee of the party seeking inspection, or where the applicant was a party to a written contract of which but one part is executed, or where one part had been lost or destroyed; and it was also, in general, considered as necessary that the party applying should be a party to the instrument which he sought to inspect.

8. CONTEMPT—*disobedience of unauthorized order.* The court has no power to require a defendant to place his books in the hands of the clerk, there to remain indefinitely, with leave to the plaintiff to make copies of the entries therein, not for the purpose of being then used in evidence under the direction of the court, but for the purpose of enabling the plaintiff to prepare his case, and disobedience of such an order will not render him liable for an attachment for a contempt.

9. SAME—*disobedience to erroneous order of court—appeal.* As a general rule, mere errors in making interlocutory orders will furnish no justification for refusing to obey the same, when they do not subject the party to the payment of money or to imprisonment. If the party against whom such order is made wishes to contest the validity or propriety of the order, he may refuse to obey, and in the further proceeding for contempt he may show in defense that the court had no authority to make the order, and if his defense is disallowed, and judgment is entered against him for a sum of money by way of fine, enforcible by execution or imprisonment, an appeal in his favor will lie.

10. SAME—*when carried on in the name of the People.* In a proceeding for a criminal contempt, the general practice is to carry on the prosecution in the name of the People; but where the proceeding is really an incident of the principal suit, and is brought to advance the interest of a party, the practice seems to be to entitle and file the papers in the original cause.

11. Where the contempt consists of something done or omitted, in the presence of the court, tending to impede or interrupt its proceed-

ings or lessen its dignity, or, out of its presence, in disregard or abuse of its process, or in doing some acts injurious to a party protected by the order of the court which has been forbidden by its order, the proceeding is punitive, and the penalty is inflicted by way of punishment for the wrongful acts, and to vindicate the authority and dignity of the People, as represented in and by their judicial tribunals.

12. In such cases, although the application for the attachment, when necessary to be made, may be made and filed in the original cause, the contempt proceeding will be a distinct case, criminal in its nature, and may properly be docketed and carried on as such, and the judgment entered therein will exhaust the power of the court to further punish for the same act and offense.

13. SAME—*when not a criminal proceeding—appeal.* Cases of that character are distinguishable from cases where a party to a civil suit, having the power to demand that the other party do some act for his benefit and to his advantage in the litigation, obtains an order of the court commanding it to be done, and upon refusal, the court, by way of execution of its order, proceeds as for contempt, for the purpose of advancing the civil remedy of the other party to the suit. The proceeding in the latter case is a civil one, and an appeal lies from the final order, as in other civil cases.

14. The mere entitling of the cause will not change the nature or character of the proceeding, and render that criminal which is otherwise a civil proceeding. So much of the record as may be necessary to show the order upon which the alleged contempt is based, and the proceedings had in respect thereof, if properly incorporated in the record, will be brought up by appeal from the order in the contempt proceeding, and may be considered on such appeal.

15. A proceeding against a party to a civil action to punish him for refusing to comply with an order to produce his books of account for the inspection of the adverse party, and to enable him to take copies from the entries therein to enable him to prepare his case for trial, is a mere civil remedy, and not criminal.

16. APPEAL—*whether it lies—interlocutory order—order to produce books.* An order of court requiring a defendant to place his private books in the hands of its clerk, that they may be inspected by the plaintiff and his attorney, with leave to examine the same and take copies of the entries therein, to enable them to prepare for trial, is not a final judgment, reviewable on appeal or writ of error, when no steps are taken in execution of such order.

17. SAME—*from judgment imposing a fine for contempt of court.* But if the court, on defendant's refusal to comply with such order, attempts to enforce the same by the imposition of a fine, with an order for an execution for its collection, or by a definite term of imprisonment, as

for a contempt of court, the judgment of the court imposing such fine or imprisonment will be final, and an appeal will lie from it.

18. SAME—*effect of reversal on motion to dismiss.* The reversal of a judgment by this court is, in effect, an overruling of a motion to dismiss the appeal.

19. SAME—*when it lies directly to this court.* Where the construction of a constitutional provision is involved in an order or proceeding, an appeal lies directly from the trial court to this court.

20. REHEARING—*effect on judgment.* The filing of a petition for a rehearing, under the rules of this court, will have no greater effect than to stay the execution of the judgment pending the petition, and the overruling of the petition will leave the judgment in full force as of the date of its rendition.

APPEAL from the Circuit Court of Cook county; the Hon. S. WILLIAMS, Judge, presiding.

This is an appeal from an order of the circuit court of Cook county, in the suit of *Berkowitz* v. *Lester et al.,* imposing a fine upon John T. Lester of $200, for contempt in refusing to comply with an order of that court. Berkowitz brought suits in assumpsit for profits on the purchase and sale of certain stocks, the declaration containing only the common counts. Lester & Co., defendants, were stock brokers. The defendants filed the general issue. Berkowitz claimed that between March 1 and April 10, 1884, he bought and sold stocks on the floor of the New York Stock Exchange, through Lester & Co., as brokers and commission men in Chicago, upon margins, and on his part as mere speculation. The record in that case shows, that on the 16th and 21st days of December, 1885, orders were made denying plaintiff's motions for leave to examine and inspect books of accounts, etc., of defendants, and that on September 23, 1886, an order was made upon the same showing, requiring defendants to produce on the trial of the cause certain books and papers, to be used in evidence therein. On the 12th day of July, 1887, Berkowitz made a further motion in said cause, "for an order on defendants to produce for inspection of the plaintiff and his attorney, for the

purpose of enabling them to prepare for trial, a book or books kept by defendants during the period of their dealing with or for plaintiff, wherein are written down statements of all daily purchases and sales of stocks by defendants, like those dealt in by defendants for plaintiff; also, book or books kept by defendants during the same period, and wherein are written down the amount of stocks which defendants did carry and were carrying from day to day, and on each day, during the same period." The motion was supported by two affidavits of Berkowitz, in the first of which he swears "that each and every of said books, accounts, memoranda and telegrams contain evidence material and pertinent to the issue; that it is necessary that affiant and his attorney should examine and inspect said books, accounts, memoranda, letters and telegrams, and each of them, in order to properly prepare for the trial of said cause; that they can not properly prepare for said trial without said inspection." The second affidavit of Berkowitz was made May 23, 1887, and undertakes to define, in a general way, the books of which inspection was desired, the purpose of such production being stated as follows: "That affiant can not safely proceed to trial unless affiant and his counsel be allowed to inspect same before trial, and that such inspection is necessary to enable affiant to properly prepare for trial." An order was made allowing the motion.

The defendants having failed to comply with this order, an attachment was issued against them for contempt. Upon the hearing thereof, the defendant, Lester, was fined $200 for such contempt, which he was ordered to pay, with costs, and to stand committed until the fine and costs should be paid. Lester brings the record to this court by appeal, and assigns the following errors: First, the order of the circuit court of Cook county, of July 12, 1887, is in violation of the fourth amendment of the constitution of the United States; second, the said order is in violation of sections 2 and 6, article 2, of the constitution of the State of Illinois; third, said order is

unconstitutional and void; fourth, the court erred in entering said order; fifth, the court had no power to make and enter said order at common law or under the statutes of Illinois; sixth, the court had no power to enforce said order by contempt proceedings, and it was erroneous to so attempt to enforce the same; seventh, because no sufficient showing was made to the court to authorize the entry of said order; eighth, because the motion on which said order was based, had, on two previous occasions, been made to the court and denied, and the subject matter of said motion was, as to the circuit court, *res judicata;* ninth, the court erred in denying the motion of appellant to quash the rule to show cause, and the attachment against him, and to set aside the order of July 12, 1887.

Mr. JOHN S. COOK, and Mr. JOHN N. JEWETT, for the appellant:

The order of July 12, 1887, is not justified by the principles of the common law or by the statutes of the State,—and this involves a construction of section 9, chapter 51, of the Revised Statutes.

A party plaintiff has no right to be advised beforehand of the defense which may be made to his suit. Those matters of defense are the peculiar property and right of the defendant, to be disclosed by him, as he may deem proper, upon the trial of the cause. 2 Phillips on Evidence, 330; *Lawrence* v. *Ocean,* 11 Johns. 245; *Strong* v. *Strong,* 1 Abb. Pr. 233.

Applications for the production of books and papers will not be allowed when the purpose is what is called a "fishing" one. *Opdike* v. *Marble,* 44 Barb. 64; *Mott* v. *Ice Co.* 52 How. Pr. 148; *Cutter* v. *Poole,* 52 id. 311; *Whetman* v. *Waller,* 39 Ind. 515; 2 Best on Evidence, sec. 625.

It is essential to an application for the production of books and papers, that it should be made to appear that the books and papers demanded contain material evidence not in the

possession of the party applying, and the books and papers should also be specifically described.  *Walker* v. *Bank*, 44 Barb. 39; *Law* v. *Stebbins*, 9 Paige Ch. 622; *Case* v. *Baupa*, 9 Bos. 595; *Morrison* v. *Sturges*, 26 How. Pr. 177; *Whetman* v. *Waller*, 39 Ind. 515.

Inspection of documents in the custody of an adverse party is only permitted when they are to some extent the property of both parties, as, in case of an agreement of which there is but one copy; then the party who holds it is trustee for the other.  In the absence of any such interest the court will not interfere.  2 Phillips on Evidence, 324, 326.

The time for calling for books and papers is not until the party requiring them has entered upon his case.  Until that period arrives the other party may refuse to produce them. 2 Phillips on Evidence, 538; 2 Starkie on Evidence, 565; 2 Saunders, 224; Wharton on Evidence, 742, 744, 749; Taylor on Evidence, sec. 1586; *Radcliffe* v. *Bleesby*, 11 C. L. 80.

The order is in violation of sections 2 and 6 of the State constitution.  *Kilbourn* v. *Thompson*, 113 U. S. 168; *Boyd* v. *United States*, 116 id. 616.

Mr. THOMAS J. SUTHERLAND, for the appellees:

As to the production of written evidence, and the right to inspect the same, see Pollock on Documents, 3; Rev. Stat. chap. 51, sec. 9.

This is a criminal case.  *Ex parte Bollig*, 31 Ill. 96; *Tolman* v. *Jones*, 114 id. 147; *People* v. *Bradley*, 60 id. 390; *People* v. *Neill*, 74 id. 68; *Phillips* v. *Welch*, 11 Nev. 190; *People* v. *Court of Oyer*, 101 N. Y. 247; *Crook* v. *People*, 16 Ill. 537.

This being a criminal proceeding, no appeal lies, but the case must be brought up by writ of error.  *French* v. *People*, 77 Ill. 532; *Ingraham* v. *People*, 94 id. 428; *Walton* v. *Develing*, 61 id. 206.

The construction of the constitution or validity of a statute is not involved in this case, but if it was, it would not give authority to the Supreme Court to review, in this case, the interlocutory order for production made in the civil case. *Cairo* v. *Bross*, 99 Ill. 524; *Transfer Co.* v. *Canty*, 103 id. 424; *Pearson* v. *Yewdall*, 95 U. S. 296; *Pennoyer* v. *Neff*, id. 733; *Arrowsmith* v. *Harmoning*, 118 id. 195; *Kennard* v. *Morgan*, 92 id. 480; *Walker* v. *Sauvinet*, id. 92; *Ex parte Wall*, 107 id. 271; *Hagar* v. *Reclamation District No. 108*, 111 id. 707; Cooley on Const. Lim. (4th ed.) 435-444.

The Supreme Court, on this appeal, has no authority to review or pass upon the merits of the order of the circuit court made in the assumpsit case of *Berkowitz* v. *Lester*, for the production of the books. In doing this it has committed a grave error.

The court, in its opinion, erroneously construes the meaning of section 9, chapter 51, of the Revised Statutes of Illinois. *Montague* v. *Dudman*, 2 Ves. 397; Kerr on Discovery, 14, 17; Wigram on Discovery, 29.

Section 9 is not a legitimate subject for construction. It means what it says, and permits an order for production before trial, for inspection, as well as at the trial, to be used as evidence.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

In the original suit of *Berkowitz* v. *Lester et al.*, out of which this controversy arises, the circuit court made an order upon the defendants to place the books in which the business transactions of the defendants with the plaintiff and other persons were entered, and showing all transactions in which the defendants, as a firm and as individuals, were in any way interested, in the possession of the clerk of the court, that they might be inspected by the plaintiff and his attorney, with leave to examine and take copies, in order that they might, as it was

claimed, prepare for the trial of said cause.   Before any pro-
ceedings were taken in execution of that order, the defendants
brought the case to this court by writ of error, for the purpose
of having that order of the circuit court reversed.   We then
dismissed the writ of error, upon the sole ground that the
order was not a final judgment, reviewable upon appeal or
error.   In delivering its opinion in that case this court said:
"It was the privilege of the defendants either to obey the order
or to stand in defiance of the power of the court.   Had the
court attempted to enforce obedience to its order by the im-
position of a fine, with an order for execution, or by a definite
term of imprisonment, as for a contempt of court, the judg-
ment of the court imposing such fine or imprisonment would
be final, and from which an appeal might be taken or to which
a writ of error would lie.   That would conform exactly with
the rule stated by the court in *Blake's case*, 80 Ill. 523.   On
the reviewing of such a judgment of the court that might de-
prive defendants either of their property or of their liberty,
the propriety of the preliminary or interlocutory order could
be considered, otherwise not."   (*Lester et al.* v. *Berkowitz*, 125
Ill. 307.)   After this decision the circuit court attached the
defendant for contempt, for refusing to obey said order, and
imposed a fine of $200 upon the defendant, Lester, and or-
dered that he stand committed until the fine and costs of the
proceeding were paid, thus bringing the case within the rule
there announced, and making the case one in which an appeal
will lie.

As a general rule, mere errors in making interlocutory or-
ders will furnish no justification for refusing to obey the same,
where they do not subject the party to the payment of money,
or imprisonment.   If the party against whom such order is
made wishes to contest the validity or propriety of the order,
he may refuse to obey, and in the further proceeding for con-
tempt he may show in defense that the court had no authority
to make the order, and if his defense is disallowed, and judg-

ment is entered against him for a sum of money by way of fine, enforcible by execution or imprisonment, an appeal in his favor will lie.

At common law, in suits upon sealed instruments, of which it was necessary to make profert, the defendant might demand oyer, and thereby have an inspection of the instrument sued upon. This was limited to contracts or other instruments under seal, and technically known as deeds. By section 20, chapter 110, of our statute relating to practice, this rule is extended to all instruments declared on, whether under seal or not. It reads: "It shall not be necessary, in any pleading, to make profert of the instrument alleged, but in any action or defense upon an instrument in writing, whether under seal or not, if the same is not lost or destroyed, the opposite party may have oyer thereof, and proceed thereon in the same manner as if profert had been properly made according to the common law." And it was held, under this statute, that the court might compel the production of the original instrument sued on. *Mason* v. *Buckmaster*, Beecher's Breese, 27.

Oyer or inspection is confined to instruments in writing declared upon and constituting the cause of action, or set up in a plea by way of defense. It does not apply when the deed is stated as mere inducement. The common law also furnished another mode, which was not confined to instruments under seal. This was by application, pending the action, to the equitable jurisdiction of the court for an order to inspect. (Pollock on Documents, 1.) The order for inspection was obtainable "only in a very limited number of cases, as, where one party could be considered as holding a document as agent or trustee of the party seeking inspection, or where the applicant was a party to a written contract of which but one part is executed, or where one part has been lost or destroyed, and it was also, in general, considered necessary that the party applying should be a party to the instrument which he sought to inspect; and although a trial was sometimes postponed for

27—150 ILL.

the purpose of enabling a party to take proceedings in equity, yet whenever an application to the court of law was in the nature of a bill for discovery, they invariably refused to grant inspection. Ibid. 3.

It is claimed, however, that the order for the production and inspection of the defendants' books is authorized by the statute relating to evidence, (sec. 9, chap. 51,) which provides that "the several courts shall have power, in any action pending before them, upon motion, and good and sufficient cause shown, and reasonable notice thereof given, to require the parties, or either of them, to produce books or writings in their possession or power which contain evidence pertinent to the issue." The evident purpose and design of this statute was to furnish to a party litigant a speedy and summary mode by which, under the order of the court, to obtain written evidence pertinent to the issue which might be in the possession and control of his adversary, and thus obviate the necessity of a bill of discovery, seeking the same end. It is manifest that it contemplates the production of evidence on the trial of the cause which the party applying therefor is entitled to introduce in support of his case, and which the other party withholds. It is only such books or writings as contain evidence pertinent to the issue that are required to be produced, and it is for the purpose of enabling the party demanding their production to introduce such pertinent matter in evidence on the trial. A defendant is not required to disclose matters of evidence relied upon in the defense, and thus inform the plaintiff of his case farther than the pleadings show. Matters purely of defense are the property rights of the defendant, which he may disclose, or not, upon the trial. (2 Phillips on Evidence, 330; *Lawrence* v. *Ocean*, 11 Johns. 245; *Strong* v. *Strong*, 1 Abb. Pr. 233.) This is undoubtedly the rule, and unless a showing is made, upon good and sufficient cause, that the evidence sought, or that the books and papers required to be produced, contain evi-

dence pertinent to the issue on behalf of the party applying therefor, the application should be denied.

The plaintiff, in his motion, and affidavits in support thereof, failed entirely to show that the books of the defendants which he asked to inspect were required for any purpose of evidence in the case. Indeed, it is apparent that the application was not for the production of such books to be used on the trial of the cause, but for the inspection of plaintiff and his counsel out of court, and for the purpose of preparing the case of the plaintiff for trial. It was shown, on the hearing, by the affidavits filed by defendants, that full and complete statements of all the plaintiff's dealings with the defendant firm, or through them, had been furnished, together with a full transcript of his account, and which were attached to the affidavit of the defendant Peters, filed on the hearing of the contempt case. The object and purpose of the applications were to enable the plaintiff and his attorney to inspect, not only the accounts of the plaintiff with the defendants, and all entries made on their books in respect of the dealings between them, but also the inspection of daily purchases and sales of stocks by the defendants during the time of the transactions between plaintiff and defendants, irrespective of to or for whom or for whose account such sales or purchases were made, and the entry of all stocks carried by the defendants for themselves or others, from day to day, and on each day during the same period. It was sought, and such was the order of the court, that the books of the defendants should be impounded with the clerk of the court indefinitely, for the purposes of such examination and inspection by counsel. Under the statute quoted, the court has power to compel the production of the books of a party to be used in evidence on the trial by his adversary, upon proper showing that they contain entries tending to prove the issues; but the statute can not be construed as giving the court power and authority to take the books and papers of the party and impound them with an

officer of the court for inspection or examination out of the presence of the court. The books sought to be inspected in this case were the property of the defendants, and contained many entries, as it is shown, of business transactions of the defendants with many other persons, and to large amounts, in which the plaintiff had no interest whatever. The right to compel the production of books as evidence is clear. The right to compel their submission to a general examination and inspection out of the presence of the court, even though in the possession of one of its officers, is entirely a different matter. It will not be understood that the rule for the production of books before a master in chancery, in proper cases, is here sought to be stated. It is only such entries as in some way tend to prove a matter material to the issue that are competent to be considered upon compliance with the order to produce the same. It might be, that these books of the defendants might contain entries tending to show illegal transactions upon the stock exchange, or upon the board of trade, of which the entries in such books might become competent evidence against the defendants in penal prosecutions; but such fact, if it existed, or was shown by affidavit to exist, would furnish no ground or justification for the order made. The statute does not give the right to compel the submission of the books of a party to general inspection or examination for fishing purposes, or with a view to find evidence to be used in other suits or prosecutions. *Updyke* v. *Marble,* 44 Barb. 69; *Mott* v. *Consumers' Ice Co.* 52 How. Pr. 148; *Cutler* v. *Poole,* 54 id. 311; *Whetman* v. *Waller,* 39 Ind. 515; 2 Best on Evidence, sec. 625.

The statute under consideration ought, if possible, to receive such a construction as will not render it in conflict with the constitution of the State or of the United States. The constitution of this State provides that the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be vio-

lated. Cooley, in a note to his work on Constitutional Limitations, (p. 307,) after referring to a few cases in which the court has ordered a production of private telegrams, says: "We should suppose, were it not for the opinions to the contrary by tribunals so eminent, that the party could not be entitled to a man's private correspondence, whether he obtained it by seizing it in the mail, or by compelling the operator of the telegraph to testify to it, or by requiring the servant to take from his desk his private letters and journals and bring them into court on *subpœna duces tecum.* Any such compulsory process to obtain it seems a most arbitrary and unjustifiable seizure of private papers,—such an unreasonable seizure as is directly condemned by the constitution." See, also, *Kilbourn* v. *Thompson,* 113 U. S. 168; *Boyd* v. *United States,* 116 id. 616.

Under the constitution, the defendants' private books and papers were protected against unreasonable searches and seizures, and we think that this constitutional right was violated and disregarded by the order of the court. While an order for the production of a party's books on the trial, to be used as evidence, in proper cases and upon proper showing, is not an unreasonable seizure of them, an order by which his books are taken from his custody and committed to that of a third person, for an indefinite period of time, for an inspection, generally, into all his affairs by the opposite party and his counsel, with leave to take copies of the entries therein, in our opinion is unwarranted by the law, amounts to an unlawful deprivation of his property rights, and is in palpable violation of his constitutional right to be secure against unreasonable seizure of his papers and effects. The statute under consideration was not intended to justify such taking and holding of the private books of a litigant. As before said, its purpose is met when the party is required to produce, in open court, all books and papers in his possession or power which contain evidence pertinent to the issue, and reasonable opportunity

is given for examination thereof in the presence and under the direction of the court.

We are of opinion that the court exceeded its power in requiring the defendants to place their books of account in the hands of the clerk, there to remain indefinitely, with leave to the plaintiff and his attorney to make copies of the entries therein, not for the purpose of being then used in evidence under the direction of the court, but for the purpose of enabling the plaintiff to prepare his case, with the advantage of being advised beforehand of the defendant's defense to his action. The defendant had the right to question the propriety of such order, and, as we have seen, to do so he must refuse to obey. The order being unauthorized, he had a right to disregard it, and there was, therefore, error in the imposition of a fine for his disobedience of such order.

For the reasons given, the order of July 12, 1887, and the judgment of the court in the attachment proceeding, are reversed.

*Judgment reversed.*

Subsequently, upon an application for a rehearing, the following additional opinion was filed:

Per CURIAM: In the petition for rehearing the point is made, among others, that the court failed to determine the motion made in this court to dismiss the appeal. The effect of the judgment of reversal was, as a matter of course, an overruling of the motion, but it is probable that sufficient attention to the point was not given in the opinion.

The first ground upon which the motion was predicated is, that the proceeding is a criminal case, and therefore, if reviewable at all, it can be done only on writ of error. It is insisted that the holding in respect of this question, in the principal case of *Lester et al.* v. *Berkowitz*, 125 Ill. 307, cited and relied upon in the opinion in this case, was *dictum*, merely. We are of the opinion that this proceeding, although criminal

in form, is purely a civil remedy, intended to enforce the private right of the party litigant. There is, as held in *Howard* v. *Durand*, 39 Ga. 358, a clear distinction, both upon principle and by the authorities, between that class of cases where it is sought to vindicate the authority or·dignity of the court, and those where the proceeding is remedial, and intended to compel the doing or omission of an act necessary to the administration of justice in enforcing some private right. In *The People* v. *Compton*, 1 Duer, 572, it is said that "a solid and obvious distinction" exists between contempt cases strictly, and those acts denominated contempts which are punished as such only for the purpose of enforcing a civil remedy. In *Crook* v. *The People*, 16 Ill. 534, we said: "Proceedings as for contempt are recognized as a right of the party in interest, and distinguishable from merely criminal contempts." The authorities sustaining and recognizing this distinction are numerous, from among which may be cited, in addition to those already noted, *Phillips* v. *Welch*, 11 Nev. 187; *Tome's Appeal*, 50 Pa. St. 285; *Cobb* v. *Black*, 34 Ga. 162; *Halley* v. *Bennett*, 4 Paige, 163; *And'r and Ken. Railroad Co.* v. *And'r Railroad Co,* 49 Me. 392; *Ruhl* v. *Ruhl*, 24 W. Va. 297; *Ex parte Bollig*, 31 Ill. 96; *Buck* v. *Buck*, 60 id. 105; *Robins* v. *Gorman*, 25 N. Y. 588. The late case of *The People* v. *Diedrich*, 141 Ill. 669, is practically conclusive of every question arising upon this branch of the case.

When the contempt consists of something done or omitted, in the presence of the court, tending to impede or interrupt its proceedings or lessen its dignity, or, out of its presence, in disregard or abuse of its process, or in doing some act injurious to a party protected by the order of the court, which has been forbidden by its order, the proceeding is punitive, and is inflicted by way of punishment for the wrongful act, and to vindicate the authority and dignity of the People, as represented in and by their judicial tribunals. In such cases, although the application for attachment, when necessary to

be made, may be made and filed in the original cause, the contempt proceeding will be a distinct case, criminal in its nature, and may properly be docketed and carried on as such, and the judgment entered therein will exhaust the power of the court to further punish for the same act and offense. *Ex parte Kearney,* 7 Wheat. 42; *Cartwright's case,* 114 Mass. 238; *New Orleans* v. *Steamship Co.* 20 Wall. 392; *Ingraham* v. *The People,* 94 Ill. 428, and cases *supra.*

Cases of that character are clearly distinguished from cases where a party to a civil suit, having the right to demand that the other party do some act for his benefit and to his advantage in the litigation, obtains an order of the court commanding it to be done, and upon refusal, the court, by way of execution of its order, proceeds as for contempt, for the purpose of advancing the civil remedy of the other party to the suit. In this class of cases, while the authority of the court will be incidentally vindicated, its power has been called into exercise for the benefit of a private litigant, and not in the public interest or to vindicate any public right, and the proceeding is regarded as coercive, merely. In *The People ex rel.* v. *Court of Oyer and Terminer,* 101 N. Y. 247, the Court of Appeals of that State, referring to this class of coercive orders, say: "And if imprisonment is ordered, it is awarded, not as punishment, but as a means to an end, and that end the benefit of the suitor in some act or omission compelled, which are essential to his particular rights of person or property. * * * If in this class of cases there exist traces of vindication of public authority, they are faint, and are utterly lost in the characteristic, which is strongly predominant, of protection to private rights imperiled, or indemnity for such rights defeated." In *Phillips* v. *Welch, supra,* the court, after saying, that "if the contempt consists of the refusal of the party to do something he is ordered to do for the benefit or advantage of the other party, the process is civil," then adds,

that this distinction is consistent with all the decisions, and in no other way can they be rendered consistent with each other.

It is wholly unimportant whether the original order be for the payment of money, for the delivery of deeds or writings, the production of books, or the doing or omitting to do any other act or thing for the benefit of the adverse party to the civil litigation. The order of which he is alleged to be in contempt was entered solely to advance the private right in the civil proceeding, and any penalty inflicted is by way of execution of that order. (3 Am. and Eng. Ency. of Law, 396, and cases in note.) Nor is the mode of punishment adopted by the court at all important. If punishment is imposed for a criminal contempt, the power of the court to further punish for the same act and offense is exhausted. In the class of cases where the penalty inflicted is intended to be coercive, the party in contempt can only be relieved by compliance with the order. If the defendant had been committed until he complied with the former order, the imprisonment would cease upon such compliance. The imposition of a fine was no less coercive. The appellant could not, by payment of the fine, absolve himself from contempt. The purpose being to compel obedience to its former order, the court would impose other penalties until there was full compliance. If, from the proceeding for criminal contempt, a private party is benefited or his remedy advanced, it will be simply because the conviction operates *in terrorem* upon the wrongdoer, in like manner as would the enforcement of a criminal statute or penal provision; in the other, the purpose is the advancement of the private right of the party in his civil suit. In one class the object of the proceeding is, by punishment of the wrongdoer, to vindicate and preserve the dignity of and respect for the public authority; in the other, to afford relief *inter partes.* Both upon principle and authority this proceeding was therefore a civil proceeding, and an appeal therefore lies from the

final order as in other civil causes. *Blake* v. *Blake,* 80 Ill. 523; *Tolman* v. *Jones,* 114 id. 147; *Walton* v. *Develing et al.* 61 id. 206; *People* v. *Diedrich, supra,* and cases cited.

It is insisted, also, that the appeal should have been dismissed, for the reason that this court was without jurisdiction, and that if appeal was allowable it should have been taken to the Appellate Court. A construction of the constitutional provision providing for security against unreasonable searches and seizures of papers and effects of the citizen is fairly raised and pressed in argument. We are of opinion that a construction of the provision of the constitution is so far involved as to give this court, under the statute, jurisdiction on direct appeal. The motion to dismiss the appeal was properly overruled.

It is also insisted in the petition for rehearing, that the original order, and the record in the original cause showing the steps taken precedent to the entry of the order holding the appellant to be in contempt and imposing the penalty, is not properly before us, and a motion was made in this court, originally, to strike out the transcript of the record and bill of exceptions therein. The holding in respect of whether the contempt proceeding should be entitled and prosecuted as an independent proceeding in the name of the People, or carried on as a part of the civil proceeding to which it is incident, is not uniform. The question has ordinarily been treated, as it necessarily is, of comparatively little importance. When the proceeding is for criminal contempt, it would be more appropriate to prosecute in the name of the People, and such is the general practice. (*Cartwright's case, supra.*) Where the contempt proceeding is really but an incident of the principal suit, the practice seems to have been to entitle and file the papers in the original cause. (*Buch* v. *Buch, supra; Blake* v. *Blake, supra; Wightman* v. *Wightman,* 45 Ill. 167; *Hill* v. *Crandall,* 52 id. 70; *Dickey* v. *Reed,* 78 id. 261; *Tolman* v.

*Jones, supra;* Rapalje on Contempts, sec. 95.) But in no event could the mere entitling of the cause change the nature or character of the proceedings, and render that criminal which was otherwise a civil proceeding; and in all this class of cases, so much of the record in the original cause as may be necessary to show the order upon which the alleged contempt is based, and the proceedings had in respect thereof, will, if properly incorporated into the record, as is here done, be brought up by appeal from the order in the contempt proceeding, and may be considered on such appeal. The motion was, in effect, overruled, and, we think, properly so.

Suggestion is made of the death of appellant, Lester, since the rendition of judgment of reversal in this court and pending the petition for rehearing. The filing the petition for rehearing can, under the rules of court, have no greater effect than to stay the execution of the judgment pending the petition. It has no effect upon the judgment, and, therefore, if rehearing is to be denied, as it must be in this case, no necessity exists for reviving the suit in the name of the personal representative of appellant, if it is otherwise proper to do so. The order overruling the petition for rehearing would leave the judgment in full force as of the date of its rendition, if rendered in vacation, and as of the last day of the term, if rendered in term time.

We are of opinion that the petition for rehearing should be denied, and this cause having been taken under advisement at the last term of the court, in the Northern Grand Division of the State, where the same is pending, it is now ordered, in vacation, that rehearing be denied.

*Rehearing denied.*