## M. S. DOWDEN, Respondent, v. WALRUS MANU-FACTURING COMPANY, Appellant:

### Kansas City Court of Appeals, June 10, 1918.

1. **ATTACHMENTS: Sales: Inspection of Books.** The plaintiff sued in attachment to recover a commission alleged to be due plaintiff on the sale of a soda fountain. The plaintiff filed a petition for an order on defendant to produce the duplicate original contract and the books of account showing the amount realized by defendant from the disposition of the fountain. The duplicate original contract was produced but not the books of account. During the trial of the case the plaintiff introduced his contract of sale, and then endeavored to prove what the defendant had received for the fountain, which testimony was objected to and sustained as hearsay. The plaintiff then introduced his order to produce the books of account and asked that he be given judgment by default, for non-production of the books as ordered by the court, which was granted. *Held*, that under the evidence the court erred in giving the plaintiff default judgment because the defendant failed to produce its books of account relating to the transaction on which the suit was based.

2. ———: **Pleading.** A mere allegation in a petition to produce books and accounts for inspection that the evidence is material and necessary won't do, since that is a mere conclusion of the pleader, but the facts should be alleged how and why the production or inspection is necessary so that the court may know and determine for itself the necessity thereof.

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Buckner,* Judge.

REVERSED AND REMANDED.

*G. A. Swanson* for respondent.

*Ellis & Yale* for appellant.

TRIMBLE, J.—This is an action by attachment, originating in a Justice's court, against defendant (a non-resident corporation), to recover a commission

199 M. A.—42.

alleged to be due plaintiff on the sale by him of a soda fountain under an agency contract plaintiff had with defendant for the sale of its fountains in certain territory. Service was obtained by levying the writ on defendant's property. The defendant entered its appearance, and doubtless, under the statute as it now exists, the attachment was dissolved as nothing further is heard of any attachment feature.

After the case was disposed of by the justice, it was appealed to the circuit court; and while the case was pending there, the parties, by written stipulation, waived a jury.

At the November term, 1915, plaintiff filed a petition for an order on defendant to produce the duplicate original contract between plaintiff and defendant (plaintiff's copy having disappeared after being filed with the justice), and to also produce defendant's books of account showing the exact amount realized by defendant from the disposition of said fountain. This petition was heard and sustained at said term. The duplicate original contract was furnished, but the books of account were not produced. On the contrary, the defendant at said term filed a motion to set aside and vacate said order, but this was overruled.

At the September term, 1916, the court, on plaintiff's motion for judgment by default against defendant because of its failure to comply with the order to produce, and after a hearing thereof, ordered that the motion for judgment by default be passed for the time being as the order to produce had failed to fix the time and place thereof; and thereupon the court ordered the defendant within ten days from that date to "produce at the office of its counsel, Ellis & Yale, 314 Dwight Building, Kansas City, Missouri, for inspection and copy by plaintiff the book or books of the defendant showing, so far as the same do show, the full account in respect to a certain soda fountain claimed herein to have been sold to Trent-Palmer Drug Company, Talequah, Oklahoma, on or about March 13, 1906, and showing the ultimate disposition

of said soda fountain and the account of the sale and disposition of the same and the amount this defendant ultimately realized therefrom." It was further ordered that if the parties were able to agree as to what defendant's books of account showed in respect to said property, its disposition and proceeds realized therefrom, the books need not be produced, otherwise defendant was ordered to produce them at the time and place aforesaid and notify plaintiff's counsel that the same were open to their inspection.

Thereafter, and at said term, defendant filed a motion to vacate said order, but, upon a due hearing thereof, it was overruled.

At the September term, 1917, a year later, the trial was entered into before the court sitting as a jury. In the progress of the trial, plaintiff introduced his evidence including the contract and his sale thereunder of the soda fountain in question at the price of $1250 and perhaps other evidence in relation to his cause of action. He then sought to prove what the defendant had received for it but as this evidence was hearsay, the defendant objected and was sustained. Not being able to show this, plaintiff introduced the orders to produce heretofore mentioned, and, upon a showing that they had not been complied with as to defendant's books of account, thereupon moved the court "for judgment and its counsel from any further participation or hearing in this case." The court ruled thereon as follows: "The motion for judgment for the amount sued for will be allowed." To this the defendant objected and excepted. Thereupon the court entered a judgment reciting that "Court finds that defendant is indebted to plaintiff in the sum of" $478.54, and adjudging that plaintiff have and recover that sum of defendant and the sureties on its appeal bond, etc. The defendant duly appealed.

The first contention made by appellant is that the suit is, in reality, a proceeding in equity for an accounting, and that, therefore, the justice had no jurisdiction to entertain it and consequently the circuit

court on appeal acquired none. If the premise is true, undoubtedly the conclusion is correct. We are, however, unable to see wherein this can be regarded as a suit in equity. The contract allowed plaintiff twenty-five per cent of all sales made at defendant's *list price* to be paid by defendant "when payments are received." On all sales *for cash* plaintiff was to receive a further commission of five per cent. If he sold a fountain for *less* than list price the deficiency was charged to him; but if he sold one for more than the list price he was to get a further commission of ninety per cent of the excess "as collections were made." Plaintiff alleged in his statement or petition that on March 13, 1906, he sold to the Trent-Palmer Drug Company of Tahlequah, Oklahoma, a fountain for $1250 the list price of which was $785, and that, as the sale exceeded the list price by $465, plaintiff under his contract, was entitled to receive ninety per cent of said last-named amount, or $418.50; that on or about June 1, said Drug Company went out of business leaving a balance due on said fountain of $645; that defendant took said fountain under its mortgage "in lieu of payment of the balance due on the purchase price of same" and, thereafter, on or about the 15th of July, sold said fountain for $700, but has refused to pay plaintiff his commission, to-wit, $418.50, for which, with interest, judgment was asked.

As the suit originated in a justice's court, no written answer was required and none was filed, but in the absence of any disclosure as to what the defense would be, we must regard the case as containing an answer in the shape of a general denial.

If the original purchaser had paid the remainder due on the fountain, then, upon such payment, plaintiff would have been entitled to his commission; and upon the failure of the purchaser to pay the remainder of the purchase price, if the defendant had sold said fountain in foreclosure of its mortgage and received the money therefrom, plaintiff would be entitled to his commission on, at least, the net amount received

at such foreclosure sale. Now, if, in *lieu of payment* of said balance, the defendant agreed to take the fountain and did take it under that agreement, thus obviating foreclosure, this was an acceptance of the fountain *at that price* in place of the cash, to-wit, $645, and plaintiff's commission would be legally due. His commission on the excess above the list price was due when such excess was received either through payment by the original purchaser or through foreclosure, and if defendant agreed to accept the fountain in lieu of the $645 debt, then it would seem the agent was entitled to his commission thereon, no matter what the company may have chosen to do with the fountain after that. The fact that it afterward resold it to the successors of the original purchaser for $700 or any other amount would not be a necessary element in plaintiff's cause of action, nor would an allegation to that effect in plaintiff's petition change the suit from law to equity by making it a suit to account for the proceeds of a mortgage. The commission asked is on the amount at which the defendant agreed to take the fountain in lieu of payment of the debt, to-wit, $645, not $700 or any other price defendant may have thereafter obtained for the fountain. When the defendant agreed to take the fountain in lieu of payment, thereby releasing payment or cancelling the debt, this was, so far as plaintiff was concerned, a receipt of the balance due on the fountain and his commission as above stated was *legally* due. The suit is to recover this commission, and, under the circumstances above disclosed, it is not seen how or why the case should be regarded as one in equity. We have not been cited to any authority so holding.

But, even if the case be one at law, the next contention is that the orders on defendant to produce its books are invalid and of no effect; and furthermore that failure to comply with them does not justify the judgment that was rendered. The authority for a court of law to compel a party, at the instance of the opposite party, to produce books and papers is given

by section 1944 to 1949, both inclusive, Revised Statutes 1909. Before the enactment of these statutes, the power to compel the production of books and papers was exercised by the courts of equity in proceedings under "Bills of Discovery." Since the enactment of said statute, however, bills of discovery are no longer allowed in this State, since the statute "has provided other more convenient modes by which every purpose of such bills can be attained." [Bond v. Worley, 26 Mo. 253, 255.] So that the statutory proceeding in this regard has superseded and has taken the place of the old method of procedure. While this is true, we need not go to the extent of holding that a proceeding under the statute must observe *all* the technical niceties of pleading and other formalities required under an equitable bill of discovery. But it would seem that, even in a proceeding under the statute to compel the production of books and papers by the opposite party, certain essential prerequisites ought to be made to appear in some way to authorize the exercise of such power. It is an important power of great delicacy, and its indiscriminate and unnecessary exercise is exposed to the hazard of being attended with great injustice and mischief. [Cummer v. Circuit Court, 38 Mich. 351.] Among the essential prerequisites of an application for an order to produce books for the inspection of the opposite party are that the books contain evidence that is material to the cause of action in behalf of the applicant. [6 Ency. of Pl. and Pr., 795.] It must be both material and necessary. [14 Cyc. 346.] And it must not only be shown that the production or inspection is material and necessary, but *indispensably* necessary and not a mere precautionary measure to prevent surprise. [6 Ency. of Pl. and Pr., 795.] And the mere allegation that the evidence is material and necessary won't do, since that is a mere conclusion of the pleader, but the facts should be alleged showing how and why the production or inspection is necessary so that the court may know and determine for itself the necessity thereof. [6

Ency. of Pl. and Pr., 804, 805; 14 Cyc. 346, 374.] The application will not be granted where the facts to be proved by the books can be otherwise established. [14 Cyc. 370.] [See, also, Lester v. People, 150 Ill. 408, 427; State ex inf. v. Continental Tobacco Co., 177 Mo. 1, 43-4; State v. Fitzgerald, 130 Mo. 407, 425.] However, in the case at bar, the orders to produce the books for inspection were made at former terms and the motions to vacate were filed and heard at former terms. At none of these were any bills of exception authorized or made saving and preserving the evidence or the proceedings thereunder or any exceptions to the action of the court either in making said orders or in refusing to vacate them. Nor was any such evidence, or exceptions to the court's action thereon, preserved in the bill of exceptions now before us even if there had been any such "term bill of exceptions" taken by which they were preserved. For this reason such of defendant's objections as go merely to matters which might have been raised at the hearing of the petition for such orders or at the hearing on the motions to vacate, are not open now. Only such matters as will show such orders void on the face of the record can now be considered in determining their validity, and by this we mean the face of the petition for the order as well as the face of the orders themselves.

Considering then the face of the record as to these orders, we take up the question, not so much whether the court had authority to make them or whether it erred in making them, but whether, as applied for and made, they are sufficient to justify the court in rendering the judgment that was entered.

It will be observed first that sections 1944-1947, appear to deal with the *production* of books or papers, presumably in court, to be used and offered in evidence as to such matters as therein are material; while section 1948 provides for the production of same at a specified time and place to allow the other party an opportunity to *inspect and copy*. And the applica-

tion and orders made are for their production for
this latter purpose. In Lester v. People, 150 Ill. 408,
herein above cited, the court makes considerable dis-
tinction between books that are ordered to be pro-
duced *in the presence of the court* for use as *evidence
in the trial,* and production at some other place out of
the court's presence, even though in possession of some
of its officers, for the plaintiff to make *an inspection
and copy.* In the case at bar, the object sought is
to compel the production of books so that plaintiff
may inspect and copy same, presumably with reference
to the fact alleged as sought and desired. But leaving
out of view any distinction by reason of the desire
to inspect instead of to use at the trial, it will be
remembered that we have hereinabove held that after
having shown the agency contract in question the
sale of the fountain and the failure to pay the $645
balance on the purchase price, the plaintiff's right
to his commission would be established by proving
that defendant accepted the fountain in lieu of the
payment of this debt. And this was what was lacking
to complete plaintiff's proof.

But the petition for the orders to produce nowhere
alleges that the books plaintiff desired to inspect would
show such fact nor that such fact was desired. The
petition alleges that the book accounts of the defend-
ant "show or should show the account of the *sale and
final disposition* of said soda fountain" and "shows
or should show the *exact amount realized* by the de-
fendant from the disposition of said fountain;" that
"proof of the facts shown by the book or books of
the defendant is necessary and material in the trial of
this case;" that said books "contain evidence re-
lating to the merits of this action" and are in the
possession and control of the defendant, etc. The
second order made by the court, whether on its own
motion as stated in the record, or on plaintiff's motion
for judgment by default, or in fact on the original
application, directs the defendant to produce "the
book or books of the defendant showing, so far as the

same do show, the full account in respect to a certain soda fountain," etc., and "showing the *ultimate disposition* of said soda fountain, etc., and the *amount* this defendant *ultimately realized* therefrom."

The only thing appearing in either the petition for the order or in the orders themselves for which their production is desired is the showing of the amount ultimately realized. Nothing is said about a mortgage or that it was desired to show that defendant accepted said fountain in lieu of the debt therein as to everything else except this "ultimate" amount, the petition for the order contains nothing except the very general statement that the "books . . . contain evidence relating to the merits of this action," and the orders themselves refer specifically to nothing except the amount "ultimately realized." So that there is no showing anywhere that the precise thing needed by plaintiff to complete his proof is contained in the books plaintiff desired to inspect, nor that, if the books, had been produced, they would have shown the needed fact. In Cummer v. Circuit Court, supra, it is said that applications for such orders "rest with great reason on very strict ground and they cannot be lawfully granted unless it is shown affirmatively and with great certainty and distinctness that a real necessity exists;" also that it must appear from the application that the production (here it is inspection that is sought), is *indispensably necessary"* . . . and ability to otherwise obtain such evidence must be negatived." But here, even if we overlook the fact that the petition for the order merely states a conclusion that the books contain material and necessary evidence, without a showing of facts as to how and why the evidence is material and necessary, and does not allege that the evidence desired can be obtained in no other way, nevertheless, the *case* discloses that the evidence specifically mentioned in the petition and sought to be obtained by the orders is not the evidence necessary to complete plaintiff's case. This is true even upon the theory that by rea-

son of the failure to preserve exceptions to said orders and to the refusal to vacate them, the defendant is precluded from complaining of errors in such matters. In Lester v. People, 150 Ill. 408, 416, the court says that mere errors in making interlocutory orders ordinarily furnish no justification for disobeying them, but in orders of this character, if the party against whom they are made desires to contest their validity he may *refuse to obey,* and, in proceedings to enforce the order or to punish for failure to obey, may show in defense that the court had no authority to make the order. No doubt this may be done, but the question is whether or not the objections to the alleged errors in making the orders have been properly preserved. We think that without regard to whether all the irregularities charged against the orders can be raised or inquired into now by defendant, owing to his failure to preserve them in term bills of exceptions, still the facts as disclosed on the face of the petition for the orders and the orders themselves as well as by the evidence in the case, show that neither the orders nor the failure of defendant to comply therewith, entitle plaintiff to a judgment by default on account of such non-compliance.

The record conclusively shows that the judgment was a judgment by default because of the failure to comply with said orders. Section 1947, Revised Statutes 1909 providing the penalty for failure to obey does not expressly, or in so many words, authorize a judgment by default for failure to obey. If the disobedient one is a plaintiff (or perhaps a defendant with a counterclaim), the court "may nonsuit him," or if he is a defendant, the court "may strike out any answer, or debar him from any particular defense in relation to which such books . . . were required to be produced, or may punish him as for a contempt." The action of the court, however, is coercive to compel obedience to its orders and not to reward or compensate the other party. It is true, to strike out the answer in this case would be merely

to remove the theoretical general denial defendant's appearance had interposed, and this would leave the case in the same shape as if defendant had ignored summons in the first place and had never appeared. The plaintiff would, in such case, be entitled to a judgment by default, but even though that were entered, nevertheless, the plaintiff would be required to prove up his case before getting a final judgment. It may very well be that if the precise fact that a plaintiff desires to establish by the production of books, is the only fact remaining unproved and necessary to complete his case, and he is unable to prove it except by and through compliance with an order to produce, then the court might in the case of wilful and intentional disobedience of such an order, properly made, regard the refusal to produce as an admission or as presumptive evidence that the concealed evidence is against defendant and is as plaintiff claims it to be. In that situation perhaps the court could, under all the facts and circumstances, render judgment for plaintiff. But in the case at bar, there is no evidence that defendant took said soda fountain in lieu of the payment of the debt due thereon, and there is no showing anywhere that the books, if produced, would disclose that fact; nor was there any intimation that such fact was sought to be established by the production of the books. Defendant's letter to plaintiff, which the latter offered in evidence, does not show that the fountain was so taken. At best, it only shows that defendant was contemplating taking possession of the fountain under its mortgage along with other steps then under consideration. But possession of the fountain would have been taken even if the mortgage were foreclosed and the fountain sold in foreclosure. The record is entirely silent as to what was done after the purchaser defaulted in the payment of the remainder due on the fountain. Moreover, the record is such as to carry the inference that the purpose for which the orders were sought was to enable the plaintiff to inspect the books and prepare for trial, and

that, without first attempting to have the orders enforced, the trial was entered into and when it was discovered that certain evidence was not forthcoming, then, and not till then, was recourse had to the orders, and the nonobservance of same, in the effort to supply the place of such evidence.

Without reference to this last, however, we are of the opinion that, under all the circumstances, the judgment rendered herein was unauthorized and, therefore, it is reversed and the cause is remanded for a new trial. All concur.