## Henry Hurley v. The State.

### No. 3684.   Decided October 31.

1.  **Theft of Dog.**—By article 724 of the Penal Code, theft in general is defined as "the fraudulent taking of corporeal personal property belonging to another." Article 725 declares, "it embraces every species of personal property capable of being taken." Article 733 provides, that within the meaning of "personal property" which may be the subject of theft are included "all domesticated animals and birds when they are proved to be of any specific value." Article 735 makes theft of the value of $20 or over a felony punishable by confinement in the penitentiary. Article 679 makes it an offense for any one to "willfully kill, wound, poison, or disfigure any dog or other domesticated animal." *Held,* in view of these statutes, that a dog is "a domesticated animal," and a subject of theft. And where it is alleged and proved to be worth $20 or over, such theft is a felony, punishable by imprisonment in the penitentiary.

2.  **Dog—"Domesticated Animals."**—See a discussion *in extenso* as to the usefulness, nature, and domesticated character of a dog, which necessarily renders him a species of valuable property, and property the subject of theft.

3.  **Bill of Exception—Self-Serving Declarations.**—Where a bill of exceptions shows that the evidence was excluded because the statements were self-serving declarations made by defendant, and further where the bill was defective in not setting out what was expected to be proved, *held,* that the ruling was correct.

Appeal from the District Court of Bexar. Tried below before Hon. G. H. Noonan.

Appellant was indicted for the theft of a dog of the alleged value of $50. At the trial he was convicted, and his punishment assessed at confinement in the penitentiary for two years. It was shown by the evidence that the dog was a fine double-nosed pointer dog, ten or eleven months old, well trained, was valuable as a hunting dog, and that the owner had been offered and could have sold it at any time for $50. The owner testified that he would not have taken $100 for it.

*McGinnis & Davis,* for appellant.

*R. H. Harrison,* Assistant Attorney-General, for the State.

WHITE, Presiding Judge.—This appeal is from a conviction in the court below for stealing a dog. As charged in the indictment, the offense (omitting the formal parts) is stated as follows, to-wit: That

Henry Hurley, "on the 7th day of the month of April, 1891, in said County of Bexar and State of Texas, did then and there fraudulently steal, take, and carry away from the possession of Charles Perner a domesticated animal, to-wit, one dog, of the value of $50, the property of the said Charles Perner," etc. At the trial appellant was convicted of the theft as alleged, and his punishment assessed at two years confinement in the State penitentiary.

No question was raised in the court below upon the sufficiency of the indictment, in that it did not state an offense against the laws of this State, nor does counsel representing appellant by printed brief in this court in any manner question the legality of the prosecution and conviction, but their contention as to errors is based solely upon matters arising at the trial. So far as we are aware, this is the first conviction in this State of a felony for stealing a dog, and owing to the rule as it obtained at the common law and the contrariety of decision by the American courts upon the subject, we deem it not inappropriate to determine in the first instance whether or not it is a felony under our present statutes to steal a dog. In the case of The State v. Marshall, 13 Texas, 58, Mr. Justice Wheeler says: "By the common law, though a man may have such property in these animals as to entitle him to maintain a civil action for an injury done to them, yet, as they are not classed among valuable domestic animals, as horses and other beasts of burden, nor among animals *domitiæ naturæ*, which serve for food, as neat cattle, swine, poultry, and the like, the property in them is considered of so base a nature, and they are held in so little estimation as property, that the stealing of them does not amount to larceny. 4 Black. Com., 236; 1 Hale, 512. But by the statute in England very severe penalties are inflicted for the crime of stealing a dog. 4 Black. Com., 236, note. And in some of the States dogs are by statute placed upon the same footing as other personal property. Whart. Crim. Law, title 'Larceny'; Heisrodt v. Hackett, 34 Mich., 283. We have in this State no statute upon the subject." And in the case of Ex Parte Cooper, 3 Texas Court of Appeals, 489, which was a case involving the constitutionality of the dog-tax law, after quoting the above extract from Judge Wheeler in Marshall's case, it was said: "At the time that decision was made there was no statute making it malicious mischief to kill a dog, but such animals have since been included in that particular statute. Pasch. Dig., art. 2344. Besides that statute, we know of no other recognizing them (in terms) among the domestic animals or as property. These authorities, we think, settle the first proposition, and to the effect that in law dogs are not recognized as other property and subject to an *ad valorem* taxation."

Mr. Bishop says, animals *feræ naturæ*, when reclaimed, become subjects of larceny, provided they are fit for food, and not otherwise; and he says: "Of animals of which, when reclaimed, larceny may

be committed within the foregoing rules, are pigeons and doves, hares, conies, deer, swans, wild boars, cranes, pheasants, and partridges; to which may be added fish for food, including, undoubtedly, oysters. Of those of which there can be no larceny, though reclaimed, are dogs, cats, bears, foxes, apes, monkeys, polecats, ferrets, squirrels, parrots, singing birds, martins, and 'coons. Though animals of the latter class may, when reclaimed, have a recognized value, and the right of property in them be protected in civil jurisprudence, it is otherwise in criminal, on the ground, probably, that anciently they were deemed of no determinate worth, and thus was established a rule which the courts could not afterward change." 2 Bish. Crim. Law, secs. 771, 773. In our State courts dogs have been so far regarded as property that civil actions for damages for negligently and willfully killing them have been sustained. Railway v. Holden, 3 Ct. App. C. C., 323; Railway v. Hauks, 78 Texas, 300.

Our penal statutes with regard to theft bearing upon this question are as follows: "Theft is the fraudulent taking of corporeal personal property belonging to another," etc. Penal Code, art. 724. "The property must be such as has some specific value which can be ascertained. It embraces every species of personal property capable of being taken." Penal Code, art. 725. Within the meaning of "personal property" which may be the subject of theft are included all domesticated animals and birds when they are proved to be of any specific value. Penal Code, art. 733. Theft of the value of $20 or over shall be punished by confinement in the penitentiary not less than two nor more than ten years. Penal Code, art. 735. In article 748 of the Penal Code theft of sheep, hogs, and goats is specifically named as an offense, with the penalty affixed. It will be noted that our statute above quoted (article 725) embraces every species of personal property capable of being taken, and includes all domesticated animals (article 725, 733); and in addition to those statutes relating to theft, by article 679 of the Penal Code, punishing malicious mischief, it is expressly made an offense to "willfully kill, maim, wound, poison, or disfigure any horse, ass, mule, cattle, sheep, goat, swine, dog, or other domesticated animal," etc. In the case of The State v. Harriman, 75 Maine, 562 (Same Case, 46 American Reporter, 423), under a statute which provided for killing or wounding "domestic animals," it was held that dogs were not domestic animals, and that a prosecution would not lie. We might, if necessary, draw the distinction between "domestic" and "domesticated," as used in our statute *supra;* but we do not deem it necessary to do so.

We quote approvingly the following language used by Appleton, C. J., dissenting from the opinion of the court in that case: "A dog is the subject of ownership. Trespass will lie for an injury to him. Trover is maintainable for his conversion. Replevin will restore him to the possession of his master. He may be bought and sold. An ac-

tion may be had for his price. The owner has all the remedies for the vindication of his rights of property in this animal as in any other species of personal property he may possess. He is a domestic animal. From the time of the pyramids to the present day, from the frozen pole to the torrid zone, wherever man has been, there has been his dog. Cuvier has asserted that the dog was perhaps necessary for the establishment of civil society, and that a little reflection will convince us that barbarous nations owe much of their civilization above the brute to the possession of the dog. He is the friend and companion of his master, accompanying him in his walks, his servant, aiding him in hunting, the playmate of his children, an inmate of his house, protecting it against all assailants. It may be said that he was *feræ naturæ;* but all animals, naturalists say, were originally *feræ naturæ,* but have been reclaimed by man, as horses, sheep, or cattle; but, however tamed, they have never, like the dog, become domesticated in the home, under the roof, and by the fireside of their masters. * * * In the present case the New Foundland dog 'Rich,' of the value of $100, was 'in the inclosure and immediate care of his master.' He was domesticated. Whether the property of the master was originally of a qualified nature or not is immaterial. The dog was under his dominion and control. 'While thus qualified property continues, it is as much under the protection of law as any other property, and every invasion of it is redressed in the same manner.' 2 Kent Com., 349." "A dog, being a 'domestic animal,' and property, an indictment is maintainable, under Revised Statutes, chapter 127, section 1, for his malicious destruction. When the statute made malicious mischief indictable, it was held that a dog was the subject of absolute property, and the killing of one under the act prohibiting malicious mischief was an indictable offense." The State v. Sumner, 2 Ind., 377. "There is such property in dogs as to sustain an indictment for malicious mischief. The State v. Latham, 13 Ired., 33. In The State v. McDuffie, 34 New Hampshire, 523, which was like this, for maliciously shooting a dog, Fowler, J., says: 'We can see no reason why the property of its owner in a valuable dog is not quite as deserving of protection against the willful and malicious injury of the reckless and malignant as property in fruit, shade or ornamental trees, whether standing in the garden or yard of their owner or in a public street, or any other species of personal property.' Dogs have been included under 'property,' and their malicious destruction has been held indictable. 2 Whart. on Crim. Law, 1082. *A fortiori* is it so when the owner is subject to taxation for his dog."

In the case of Mullaly v. The People, 86 New York, 365, which was a case for stealing a dog, it was held that the term "personal property" as used in the New York statute included dogs, and that the

stealing of a dog was therefore larceny under said provision. In the opinion it is said: "At common law the crime of larceny could not be committed by the feloniously taking and carrying away a dog;" citing authorities. After which it is said: "The reason generally assigned by common law writers for this rule as to stealing dogs is the baseness of their nature, and the fact that they were kept for the mere whim and pleasure of their owners. When we call to mind the small spaniel that saved the life of William of Orange, and thus probably changed the current of modern history (2 Motley's Dutch Republic, 398), and the faithful St. Bernards, which, after a storm has swept over the crests and sides of the Alps, start out in search of lost travelers, the claim that the nature of a dog is essentially base, and that he should be left a prey to every vagabond who chooses to steal him, will not now receive ready assent. In nearly every household in the land can be found chattels kept for the mere whim and pleasure of the owner, a source of solace after serious labor, exercising a refining and elevating influence, and yet they are as much under the protection of the law as chattels purely useful and absolutely essential. This common law was extremely technical, and can scarcely be said to have a sound basis to rest on. While it was not larceny to steal a dog, it was larceny to steal the skin of a dead dog, and to steal many animals of less account than dogs. * * * The artificial reasoning upon which these rules were based are wholly inapplicable to modern society. *Tempora mutantur et leges mutantur in illis.* Large amounts of money are now invested in dogs, and they are largely the subjects of trade and traffic. In many ways they are put to useful service, and, so far as pertains to their ownership as personal property, they possess all the attributes of other personal property. If the common law rule referred to ever prevailed in this State, we have no doubt it has been changed by legislation." In the case of The State v. Yates, 10 Criminal Law Magazine, 439, there is a very learned opinion on the same subject, and it was held therein that "a dog is 'a thing of value,' and may be stolen, and burglary may be committed by breaking and entering with intent to steal a dog."

So we see that in other States the larceny of a dog has been held punishable upon the ground that he is a "domestic" animal; that he is "personal property" and a "thing of value." We think that under our statute there can be no question but that the dog would come within the terms "domesticated animal," and as such become the subject of theft. In the case before us the dog was a fine pointer, which was shown to be worth at least $50, and as such his theft would be under our statute a felony.

Defendant's only bill of exceptions was taken to the refusal of the court to allow him to prove a conversation between the witness Cooper

and himself, relating to the dog, the day after the dog was alleged to have been stolen. The bill of exceptions is defective in not stating or setting out what was expected to be proved by Cooper, and it appears that the court sustained the State's objection to the evidence, because it proposed to introduce statements of the defendant which were self-serving declarations. We can not see from the bill itself that any error was committed. If the proposed testimony offered was self-serving declarations, the court unquestionably did not err in excluding it. Harmon v. The State, 3 Texas Ct. App., 51; Robinson v. The State, Id., 256. We have found no other matters requiring a discussion, and no error for which a reversal would be warranted being made to appear, the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.