HARRY OSTER

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 24, 1901.*

| 192 | 473 |
| 113a | 199 |
| 114a | 326 |
| 192 | 473 |
| 115a | 88 |

1. CONTEMPT—*when proceeding is criminal and not remedial in character.* An independent contempt proceeding in behalf of the People for the purpose of punishing a receiver in a chancery suit for his alleged participation in the wrongful removal of the goods in his custody from the store house used by him, which goods had been returned to his possession, is criminal in character.

2. SAME—*when party charged with contempt must be discharged on answer.* In criminal contempts alleged to have been committed out of the presence of the court, if the defendant's sworn answer is sufficient to acquit him of the charge he is entitled to be discharged.

*Oster* v. *People*, 94 Ill. App. 288, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

MYER S. EMRICH, for appellant.

ROSENTHAL, KURZ & HIRSCHL, for the People.

Mr. JUSTICE BOGGS delivered the opinion of the court:

In a proceeding in chancery instituted in the circuit court of Cook county by one Peter Klein against his co-partner, Morris Winkler, for a partnership accounting, the appellant, Harry Oster, was, on the 12th day of July, 1900, appointed receiver of the assets of the firm and placed in possession of such assets in his capacity as receiver, with directions to continue the business of said firm as theretofore conducted, and with authority to employ assistants, purchase goods to replace those sold, etc. On the 7th day of August, 1900, certain creditors of the firm, viz., the Reynolds & Reynolds Company, William Loghlin Bros. and H. P. Emmerson & Co., filed their

petition in said chancery cause, in which they alleged that Martin Winkler, (a brother of said Morris Winkler,) said Peter Klein and said Oster, receiver, had removed a portion of the goods (of which the assets of the firm were composed) from the stock so in the hands of said receiver for said firm from the place of business of the said firm and of said receiver, under circumstances that indicated an intent on the part of said parties to secrete said goods and deprive the court of the control thereof and deprive the creditors of the firm of the value thereof. The prayer of the petition was that said Oster, as receiver, should immediately demand and procure the return to him, as receiver, of said portion of said stock of merchandise so alleged to have been taken from said stock, etc. On the same day all of said parties except said Oster were notified to appear before the judge of said court in chancery sitting, and show cause, if any, why they should not be attached as for contempt, but no such action was taken as to said Oster. On the petition said Morris Winkler, Peter Klein and Oster were brought into court and required to make answer thereto.

The issues made under the petition and the answers thereto came up for hearing on the 7th day of August, 1900,—the same day on which the petition was filed. Evidence upon the part of the petitioners and the respondents to the petition was taken on the 7th and 8th days of the said month of August. The transcript does not disclose any decree or order entered with relation to the action of the court on the prayer of the petition, but it appears from the proof in the record the goods which the petition alleged had been improperly removed from the custody of the receiver were restored to his possession during the night of the 7th of August. It appears, however, from the transcript of the record, that on the following day, the 8th day of August, during the course of the proceedings upon the petition, the court entered the following order in the matter of such petition:

"The court finds that the said Harry Oster, receiver in this case of Peter Klein *v.* Martin Winkler, being case Gen. No. 208,885, and Martin Winkler, Peter Klein and Albert Winkler, should be and hereby are attached to show cause, if any they have, why they, and each of them, respectively, should not be adjudged guilty of contempt of court in this: that they, that is to say, the said Peter Klein, Martin Winkler and Albert Winkler, with the full knowledge and consent and assistance of the said Harry Oster, receiver, did, after the appointment of the said Harry Oster as receiver in said cause in this court, to-wit, after the 12th day of July, A. D. 1900, take and carry away from the possession of said receiver and from the premises occupied by said receiver and the said firm of Winkler & Klein, sundry goods, wares and merchandise, the property and part of the estate of said Martin Winkler and Peter Klein, trading as Winkler & Klein, and being in the hands of the said Harry Oster as receiver of the said Winkler & Klein, consisting of harmonicas, marbles, toys, pocket-books, lead-pencils, stationers' supplies, blank books and other articles, of the value of eight hundred dollars, ($800) with the intention of defrauding said estate.

"It is therefore ordered that the said Harry Oster, Peter Klein, Martin Winkler and Albert Winkler be and hereby are ordered to show cause as above set forth, and directed to appear before this court Friday, August 10, at the opening of court, at ten o'clock A. M. on said date, before Judge Hanecy, to further answer to said charge, and to appear at such other times, from day to day and from time to time, as this court may direct, and that the further hearing of this cause be continued until Friday, August 10, A. D. 1900, at ten o'clock A. M., and that the said Harry Oster give bond for his appearance on the said 10th day of August, A. D. 1900, at ten o'clock A. M., before the said Judge Hanecy, in the sum of fifteen hundred dollars ($1500), with good and sufficient surety to

be approved by the clerk of this court, and upon failure to file said bond with said surety, approved by the clerk of this court, the said Harry Oster to stand committed to the county jail for such contempt, and the said commitment to stand until said bond is given."

Oster was represented by Mr. Silber, an attorney, in the matter relating to the management of the receivership, but other counsel, Mr. Myer S. Emrich, was given in charge of the defense of the charge of contempt against him. On the said 10th day of August said Oster, accompanied by his counsel, Mr. Emrich, appeared before the judge of said court judicially sitting who presided when said order was entered, and filed an answer denying in detail the truth of the alleged facts set forth in the order as constituting the charge of contempt against him and directing that he be attached to answer as for contempt. The answer was verified by his oath. Counsel for said Oster read the answer to the court. The court thereupon announced that he would hold said Oster under bail to answer for perjury committed in the answer. The court then proceeded to comment on the testimony which had been given on the hearing on the issues made under the petition filed by said Reynolds & Reynolds Company and others, and concluded by announcing that he adjudged said Oster to be guilty of contempt of court, and sentenced him to be confined in the county jail for four months and to pay a fine of $300, and stand committed until the fine was paid. The sentence so orally pronounced was entered of record in an order entered in a cause styled "People of the State of Illinois *v.* Harry Oster *et al.*—Proceeding for contempt." The substance of the order is that Oster is adjudged to be guilty of contempt, and ordered to be imprisoned in the common jail of Cook county for four months and to pay a fine of $300, and to stand committed to the county jail until said fine is paid. A writ of error was sued out of the Appellate Court for the First District to reverse this order and judg-

ment, but the judgment of the Appellate Court was adverse to the plaintiff in error. The correctness of said judgment of affirmance is now before us for review.

The answer explicitly denied the general charge set forth in the order of the court directing Oster to be attached, and denied in detail other matters brought out in the hearing of the petition filed by the creditors. No interrogatories were filed to which more specific answers could have been required, as might have been done if the answer was not regarded as sufficiently definite as to the *factum* of the contempt. (4 Ency. of Pl. & Pr. 796.)

The answer, if true, acquits said Oster of the charge of contempt. The trial judge acted on the theory it was competent, on the hearing of the attachment for contempt, to consider the testimony which had been given before him on the hearing of the issues made under the petition of said Reynolds & Reynolds Company and others, as in denial of the answer or as original evidence in support of the charge of contempt, and adjudged such testimony warranted the judgment convicting Oster of the charge of contempt. The alleged acts of contempt occurred, if at all, out of the presence of the court. The purpose of the proceeding for contempt was not to enforce any act for the benefit of the creditors of the said firm or advance the private rights of any such creditor, but to vindicate the authority and dignity of the court. The proceeding was punitive and for the purpose of punishing Oster. The penalty was not as a means to the end that Oster should be compelled to do or omit to do some act, but as punishment to him for an act already charged to have been done. The proceeding was criminal in its nature, was independent and distinct from the chancery proceeding in which Oster was appointed receiver, and also from the intervening petition filed in that proceeding by said Reynolds & Reynolds Company and others to recover the goods alleged to have been surreptitiously removed from the custody of the receiver. It should have been, as it

was, prosecuted in the name of the People of the State of Illinois.    2 Bishop on Crim. Law, sec. 269; *Lester* v. *People*, 150 Ill. 408.

As a general rule, an attachment for contempt alleged to have been committed out of the presence of the court should be based upon an affidavit as to the truth of the facts constituting the alleged contempt. (4 Ency. of Pl. & Pr. 779.) But we do not think an affidavit was essential to the jurisdiction of the court to require Oster to show cause in this instance.  The court, in the course of the hearing of the petition of the Reynolds & Reynolds Company against Oster, heard sworn testimony given in open court which constituted a sufficient foundation on which to found a charge as for contempt and to award. the process of attachment necessary to bring Oster before the court in order the charge might be judicially heard and determined. (4 Ency. of Pl. & Pr. 776, 780.) The court, in the order entered August 8 directing the said Oster to appear August 10, (the day fixed for the hearing of the charge of contempt against him,) set forth the facts constituting the charge so fully that the said Oster was advised, in a general way, at least, of what he would be called upon to meet and answer. Oster was present in court when this order was entered, and there was no necessity the process of attachment should issue against him. (*Ex parte Petrie*, 38 Ill. 498.) The court had ample power to require him to give bail for his appearance on the 10th day of August,—the day fixed for the hearing of the charge against him. He appeared on that day and filed an answer, verified by his oath, which, standing alone, purged him of the alleged contempt and constituted a full defense to the charge of contempt alleged to have been committed out of the presence of the court. The proceeding for contempt was not for the purpose of enforcing any order of the court or in aid of any civil remedy for the benefit of any injured party. The goods which had been removed from the store house occupied

by the receiver had been restored, and the only purpose of the attachment was to punish Oster for his alleged participation in the removal of the goods. The proceeding was criminal—not remedial—in character. In criminal contempts alleged to have been committed out of the presence of the court, if the contemnor's answer is sufficient to acquit of the charge he must be discharged. (*Crook* v. *People*, 16 Ill. 534; *Buck* v. *Buck*, 60 id. 105; *People* v. *Diedrich*, 141 id. 665; 4 Ency. of Pl. & Pr. 795.) The proceeding against Oster is criminal or *quasi* criminal in character, and independent and distinct from the chancery proceeding under which he was appointed receiver or that instituted by the Reynolds & Reynolds Company and others by intervening petition in such chancery proceeding. It was a distinct and independent proceeding in behalf of the People of the State of Illinois to punish him for an alleged wrongful act done in defiance of the authority and dignity of a judicial tribunal created and existing by virtue of the constitution and laws of the State. (See additional opinion in *Lester* v. *People, supra.*) It was correctly docketed in the trial as an independent and distinct cause from the chancery proceeding, and was properly prosecuted by and in the name of the People of the State of Illinois.

The evidence which had been produced before and heard by the chancellor in the cause in equity was not introduced in the hearing of the contempt case and could not be considered by the court as overcoming the sworn answer filed by Oster, even if it had been competent to controvert his answer. Oster should have been discharged on his answer.

The judgment must be and is reversed.

*Judgment reversed.*