## EMPLOYERS' TEAMING CO. v. TEAMSTERS' JOINT COUNCIL et al.

(Circuit Court, N. D. Illinois, E. D.    December 20, 1905.)

### No. 27,719.

1. INJUNCTION—DECREE—PERSONS CONCLUDED—VIOLATION OF INJUNCTION BY PERSONS NOT PARTIES.

Rev. St. § 725 [U. S. Comp. St. 1901, p. 583], which gives to federal courts power to punish as contempts disobedience or resistance by officers, "or by any party, juror, witness or other person, to any lawful writ, process, rule, decree or command of the said courts," extends the power of such a court to enforce its decrees to persons other than those made parties by name; and it is the settled rule thereunder that, to render a person amenable to an injunction, it is neither necessary that he should have been a party to the suit nor have been actually served with a copy of the injunction, so long as he appears to have had actual notice.

2. SAME—PROCEDURE—TITLE OF PROCEEDING.

Where contempt proceedings for violating an injunction are instituted against a person not a party to the suit in which the injunction was issued, the proper practice is to entitle the application for a rule to show cause in such suit; and, if the respondent is found guilty thereafter, all orders should be entitled as in a suit by the government.

3. SAME—SUFFICIENCY OF PETITION.

A petition for a rule to show cause why the respondent named therein should not be adjudged guilty of a contempt of court in violating an injunctional order made in a cause to which such respondent is not a party is sufficient to advise the respondent of the charge against him, and to authorize the court to punish him, where it sets out specifically the acts which he is charged as having committed, although such acts bring the case within the criminal and punitive, rather than the civil and remedial, class of contempts, the power of the court to punish a willful disregard of its authority not being restricted by the conclusion of the petitioner to the contrary, and that petitioner should be held for a civil contempt for violation of the injunction.

4. CONTEMPT—ANSWER AS EVIDENCE.

In a proceeding for contempt in a suit in equity, although the contempt charged is of the criminal class, the sworn answer of the respondent is not conclusive, but may be traversed, whether or not he is a party to the suit.

5. INJUNCTION—VIOLATION—OBSTRUCTING PROCESS OF COURT.

An order was issued in a suit in equity for an injunction restraining defendants, their agents or servants, and all other persons aiding or abetting or acting in concert with them, or having knowledge of the order,

from interfering with or in any manner hindering, obstructing, or stopping the business of complainant, which was a teaming company. The order was widely published. Copies were posted in public places and placed on each side of all of complainant's wagons, which also bore large signs calling attention thereto. The wagons were also operated under armed guards. In proceedings for contempt against respondent, who was not a party to the suit, it was shown that he was one of the most active in a mob which attacked one of complainant's wagons so placarded and guarded; that he incited others to violence, and himself threw stones at the wagons, teamsters and guards, and assaulted one of the guards while the latter was in charge of the police. *Held*, that he must be deemed to have had knowledge of the order, notwithstanding his sworn general denial of all the allegations of the petition and that he was guilty of contempt in aiding and abetting the defendants in the cause in violating the order of the court and willfully obstructing its process.

In Equity. On motion to attach for contempt.

Moran, Mayer & Meyer, for complainant.
J. C. LeBosky and Daniel Cruise, for defendants.

KOHLSAAT, Circuit Judge. This cause comes before the court on motion to attach certain persons, not made parties to the original bill by name, for contempt of court alleged to have been committed by them, respectively, in that they knowingly violated the restraining order issued in said cause. The decree ran against the defendants named therein, "and each and every of the agents and servants of the said defendants, and of each of them, and any and all other persons and associations now or hereafter aiding or abetting or confederating or acting in concert with said defendants, or any or either of them, in committing the acts and grievances or any of them complained of in said bill of complaint." It directs that its terms be binding upon the defendants named, and "all other persons whomsoever from and after the time they severally have knowledge of the allowance of this order."

The petition for a rule to show cause sets up the filing of the bill in which it is prayed that the original defendants, and each and every of their agents and servants, and any and all other persons and associations, be restrained from interfering with, hindering, obstructing, or stopping any of the business of complainant, and makes further reference to the prayer of the bill. It then recites the decree for an injunction issued in the language of the bill. It proceeds further to set out what steps were taken to convey notice to everybody, including persons in the situation of respondents, and charges, upon information and belief, that respondents had actual knowledge of the decree and its terms. It then sets out the several acts of the several respondents complained of, supporting the same by affidavits, and prays that an order may be entered directing respondents severally to show cause by a short day why they should not severally be attached for contempt for violating "said temporary stay and injunctional order."

Respondents insist that the court is without power to grant the relief asked for in the petition. It is not an easy matter to deduce a definite rule of law in such cases from the various federal decisions. Section 725 of the Revised Statutes of the United States of 1878 [U. S. Comp. St. 1901, p. 583] reads as follows:

"The said courts shall have power to impose and administer all necessary oaths, and to punish, by fine or imprisonment, at the discretion of the court, contempts of their authority: Provided, that such power to punish contempts shall not be construed to extend to any cases except the misbehavior of any person in their presence, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said court in their official transactions, and the disobedience or resistance by any such officer, or by any party, juror, witness, or other person, to any lawful writ, process, order, rule, decree, or command of the said courts."

The language giving the court power, to punish the "disobedience or resistance by any such officer, or by any party, juror, witness or other person, to any lawful writ, process, rule, decree or command of the said courts," manifestly extends the power of the court to enforce its decrees to persons other than those made parties by name.

Mr. Justice Brown, speaking for the Supreme Court in Re Lennon, 166 U. S. 548, 17 Sup. Ct. 658, 41 L. Ed. 1110, lays down the general rule that:

"To render a person amenable to an injunction, it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual notice"—citing High on Injunctions, § 1444; Mead v. Norris, 21 Wis. 310; Wellesley v. Mornington, 11 Beav. 181.

This has been uniformly followed in the federal courts, and is now the well-settled rule. The respondent in that case was an employé of the defendant, but the decision does not seem to rest at all upon that fact. The language both of the statute and the Lennon Case seems broad enough to embrace the facts at bar. As to this, however, the courts seem to be in doubt.

In the Case of Reese, 107 Fed. 942, 47 C. C. A. 87, the Circuit Court of Appeals for the Eighth Circuit had under consideration a motion for the issuance of a rule to show cause, which prayed that such rule issue against Reese, who was not a party to the original suit, to show cause why he should not be attached for contempt for violation of the temporary injunction. It was there charged that Reese had come into Kansas at the head of a column of about 300 men, called "strikers," and had interfered with the men and plant of the party protected by the injunction. The decree ran against the named defendants and "all other persons who have or may combine, confederate, or conspire with said defendants or either of them." Reese had not been served with the order, but was found by the Circuit Court to have had knowledge thereof, and was adjudged guilty of violating the temporary injunction and of contempt of court, and was sentenced to three months' imprisonment. Proceedings for habeas corpus were instituted before Thayer, Circuit Judge, and Reese was discharged. From this order the jailer prosecuted an appeal. It does not appear from the motion for the rule, or otherwise, in the record, that Reese had combined or confederated or conspired with the named defendants. Such being the case, the court held that the act complained of was one against the dignity of the court, and an obstruction of, and interference with, the course of justice; that one not a party to the suit by name or adequate representation is not amen-

able to punishment as for contempt for a violation merely of the injunction at the suit of a private litigant for his protection. "There is nothing in the petition, order to show cause, or commitment," says the court, "remotely suggesting the purpose of the court to punish him for a willful resistence or disregard of the court's authority, or for interfering with or obstructing the course of justice otherwise than the same is involved in violating an express order of the court, alleged to have been made in the case against him. * * * The petitioner, not being a party defendant in the main case, was not subject to the jurisdiction of the court in that case, and the court had no authority to punish him for the offense as charged against him in the motion for commitment, and a fortiori no authority, on that motion, to punish him for some other offense not therein charged against him." In support of this position the court cites the English case of Seaward v. Paterson, 76 Law T. (N. S.) 215. In that case the respondent was adjudged in contempt for knowingly aiding and assisting in doing that which the court had prohibited.

In the case of Phillips v. Detroit, 19 Fed. Cas. 512, Case No. 11,101, Judge, now Justice, Brown, cites approvingly the language of the court in the case of Wellesley v. Earl of Mornington, 11 Beav. 180, in which an injunction was issued against the defendant which did not in terms extend to his servants and agents, and says:

"A motion having been made to commit his agent for a breach of the injunction, it was held irregular, but it was afterwards decided that, if he had knowledge of the writ, he might be committed for the contempt, although not for the breach of the injunction."

The judgment of the court, however, in Phillips v. Detroit, was that respondents were guilty of a violation of the injunction, and they were subjected to the payment of a fine.

In the case of Parsons v. People, 51 Ill. App. 467, the court, speaking through Judge Gary, says:

"That Ida [the respondent] was not one of the board, and therefore not in terms enjoined, does not excuse her disobedience of any injunction, the existence of which she knew [citing Wellesley v. Mornington, supra]. But then the rule upon her should not have been, as it is, to show cause why she 'should not be attached and committed to jail for contempt of court in disobeying the injunction entered in this cause,' etc., but it should have been, as it was as to other parties included in the rule, 'in knowingly and willfully aiding and abetting in disobeying and violating said injunction.'"

In Sloan v. People, 115 Ill. App. 64, the court says of this decision that the decision was not placed upon the ground above stated, but upon a higher ground, and that it should not control.

Judge Baker, in the Indiana District, in Conkey v. Russell (C. C.) 111 Fed. 417, finds nothing in the Reese Case holding that a person not named as a defendant in the main suit, who aids and abets, may not make himself responsible the same as if he had been made a party to the main suit, and therefore proceeded to hold Besette, the respondent, as a violator of the injunctional order as an aider and abettor. On appeal to the Court of Appeals for this Circuit the case was certified to the Supreme Court as to certain questions of practice, where it was held that the act of Besette, which consisted in interference

with the employés of, and those seeking employment with, the Conkey Company, in view of the fact that he was not a party to the main suit, came "more fully within the punitive than the remedial class." Unfortunately no decision on the merits was arrived at in that case. It was, however, held that the matter could be taken to the Appellate Court only by writ of error. In the course of its decision, the court quotes with approval the language of Judge Sanborn, of the Court of Appeals for the Eighth Circuit, in Re Nevitt, 117 Fed. 448, 54 C. C. A. 622, as follows:

"Proceedings for contempt are of two classes—those prosecuted to preserve the power and vindicate the dignity of the court and to punish for disobedience of their orders; and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they are instituted to protect or enforce."

And adds:

"Doubtless the distinction referred to in the quotation is the cause of the difference in the rulings of the various state courts as to the right of review. Manifestly, if one inside of a courtroom disturbs the order of proceedings or is guilty of personal misconduct in the presence of the court, such action may properly be regarded as a contempt of court; yet it is not misconduct in which any individual suitor is especially interested. It is more like an ordinary crime which affects the public at large, and the criminal nature of the act is the dominant feature. On the other hand, if, in the progress of a suit, a party is ordered by the court to abstain from some action which is injurious to the rights of the adverse party, and he disobeys that order, he may also be guilty of contempt, but the personal injury to the party in whose favor the court has made the order gives a remedial character to the contempt proceedings."

The court then proceeds to say:

"It may not be always easy to classify a particular act as being either a punitive or a remedial character. It may partake of the characteristics of both."

In the case of U. S. v. Agler (C. C.) 62 Fed. 824, Judge Baker held that a petition for a rule to show cause which, in the absence of several other allegations referred to, failed to charge respondent, who was not a party to the main case, with aiding the common object, together with other members, is insufficient, and adds:

"I think an injunction that is issued against one man, enjoining and restraining him and all that give aid and abet him, is valid against everybody that aids or gives countenance to the man to whom it is addressed."

The New York Court of Appeals in Rigas v. Livingston, 178 N. Y. 20, 70 N. E. 107, holds that persons who are not connected in any way with the parties to the action are not restrained by the injunctional order. This seems to be the established rule in that state, based upon the language of the statute.

In Union Pacific Ry. Co. v. Ruef (C. C.) 120 Fed. 116, Judges Mun-

ger and McPherson, after directing certain parties to be dismissed from the case, say:

"But they will be held to have knowledge of this opinion and of the decree herein. And those in any way related in a business way to the other defendants, those who are servants, agents, or employés of the defendants who are enjoined, and those who are fellows or companions of defendants, who are strikers, are and will be bound by the writ of injunction issued herein to the same extent and as fully as if named in the writ. * * * And any action by those dismissed from the case, as well as others, in any way in conflict or in violation of the writ of injunction, will subject themselves to the same penalties as though they were named in the writ of injunction."

In Chisholm v. Caines (C. C.) 121 Fed. 397, it is held that a person not a party to the suit may be in contempt either by aiding or abetting a party to the suit in disobeying or resisting the injunction, or by independently and intentionally interfering with, and preventing the execution of, the decree of the court, thereby thwarting the administration of justice, rendering nugatory its action, and contemning the authority of the court. The proceeding for contempt was based upon a petition which simply stated the facts and alleged a violation of the injunction. Respondents, in their answer, denied the jurisdiction of the court upon the ground that they were not parties to the suit, and that the injunction was asked solely for the individual benefit and protection of complainants. The court held the return insufficient, thereby holding in substance that the petition was sufficient as a basis for contempt proceedings against respondents, not as parties to the suit, but as interfering with, and obstructing the course of, justice.

In the case of O'Brien v. People (decided by the Supreme Court of Illinois, June 23, 1905) 75 N. E. 108, it appears that certain persons, some of whom were not parties to the suit, were attached and found guilty of violating the injunction, and were punished by the lower court. The cause was taken to the Supreme Court on writ of error. They were held upon a petition which charged that they knowingly and deliberately violated the injunction. It was, among other things, insisted that the petition and affidavits upon which the contempt proceedings were based were insufficient, and that they did not clearly advise respondents of the offense with which they were charged. The court held that respondents were not entitled to a specific bill of particulars, and that it was not necessary to set out the charge with the same particularity that would be required in an indictment, citing 1 Bishop's Crim. Proc. § 643. After defining the several kinds of contempt proceedings the court holds that the bill was for the protection of the business of complainants; that while the acts complained of incidentally assailed the dignity of the law, and the order of the court had been violated, that was merely incidental to the rights of private individuals; that the proceeding was civil and in no sense criminal. The facts in this case are in substance like those in the case at bar. The distinction between those made parties and those not so made, and whether in the latter case respondents could be held the same as if made parties to the main bill, was not specifically raised.

A careful review of the subject leads to the conclusion that the acts as charged against the respondents come, as Justice Brewer says

in the Besette Case, 24 Sup. Ct. 665, 48 L. Ed. 997, "more fully within the punitive than the remedial class." See, also, In re Christensen Engineering Co., 194 U. S. 458, 24 Sup. Ct. 729, 48 L. Ed. 1072. That being so, and assuming the acts alleged to be proven, is the petition for a rule sufficient to justify the court in finding respondents guilty of contempt and punishing them therefor? The decision in the Reese Case, supra, seems to me to hold clearly that it is not, if the contempt is to be treated as criminal, and respondent not within the class of the parties made defendants. The learned judge who wrote that opinion treats the petition as in the nature of, and practically like, an indictment, and holds that respondent was entitled to be advised of the charge against him, which, he states, was not affected by the petition for the rule in that case. While it is doubtless true that a respondent is entitled to be advised of the charge he is to meet, it is also true that such a requirement goes rather to the facts to be established than to the kind of proceeding in which such facts are to be reviewed by the court. The petition herein was presented in the cause pending in equity. The proceeding, while properly of a punitive nature, was also in aid of complainants in the case. It came under that class of actions which the cases supra hold to partake of both a punitive and a civil or remedial character. The same facts are sufficient to establish respondents' guilt in either case. Did the petition in question and the accompanying affidavits advise respondents of all the matters requisite to their defense? Certainly, so far as the evidence was concerned, the facts relied on as constituting the contempt were fully set out. It could have been no different whatever the character of the information might be. An adequate return to the rule must be the same in either case. It was proper that the petition be entitled in the equity suit. Where contempt proceedings are instituted against a person not a party to a civil action, the proper practice is to entitle the application for a rule to show cause in the civil action; and, if the respondent is found guilty, thereafter all orders should be entitled as in a suit by the government. U. S. v. Wayne, 28 Fed. Cas. 504, Case No. 16,664, cited in U. S. v. Anonymous (C. C.) 21 Fed. 761; Lester v. People, 150 Ill. 408, 424, 23 N. E. 387, 37 N. E. 1004, 41 Am. St. Rep. 375; Rapalje on Contempt, § 95.

In O'Brien v. People, supra, it was objected that the petition and affidavits upon which the rule was issued were insufficient, for the reason that they did not clearly and specifically inform plaintiffs in error as to the offense with which they were charged. The court says:

"We do not think this position tenable. Courts of chancery have within themselves full power and authority to enforce their official mandates in a summary and effective manner. To say otherwise would render them powerless and inefficient. * * * As we have said, the court had jurisdiction of the persons and the subject-matter of the suit, and issued the injunction, which was not only binding upon the persons who were actual parties defendant to the bill, but was also binding upon all parties who had actual knowledge of the contents of the writ. * * * We are unable to see how it can be successfully maintained that defendants below did not have sufficient notice of the charge made against them to intelligently prepare their defense, if they had any. They were not entitled to a specific bill of particulars, nor was it necessary to set out the charges with the same particularity that would be required

in an indictment. It has often been held that, in an attachment proceeding for contempt alleged to have been committed out of the presence of the court, it should be brought to the attention of the court by an affidavit setting out the particular respects in which the injunction is alleged to have been violated; but that was sufficiently done in this case"—citing 4 Enc. of Pl. & Prac. 776, 780; People v. Diedrich, 141 Ill. 665, 30 N. E. 1038; Oster v. People, 192 Ill. 473, 61 N. E. 469, 56 L. R. A. 462.

The most common, and, in the United States, the almost universal practice in this (proceedings for contempt) matter, is to present to the court an affidavit setting forth the facts and circumstances constituting the alleged contempt. Rapalje on Contempt, § 93. The affidavit may be made on information and belief. Id. § 94. All the facts necessary to constitute the contempt should be stated in the affidavit. Id. § 96. While it is generally required that the rule should be based on an affidavit, still it is not absolutely essential. It is only necessary that the court have sufficient evidence upon which to base the issuance of the rule. Newport v. Newport Light Co., 92 Ky. 449, 17 S. W. 455; In re Daves, 81 N. C. 72; In re Deaton, 105 N. C. 59, 11 S. E. 244; State v. Frew, 24 W. Va. 416, 49 Am. Rep. 257. It would seem to be a very narrow construction of the powers of the court to hold that the mere conclusion of the petitioner that respondent should be held for the violation of the injunctional order as a party to the suit would tie the hands of the court in punishing a willful disregard of its authority. If, as intimated in the Reese Case, supra, there is a distinction to be observed in the terms of the initial proceedings in the several kinds of contempt, it must be also true that in the present case the form of the moving papers, in so far as they might be held to suggest the one course rather than the other, are surplusage, and may and should be ignored by the court. The petition in this case is unmistakable in its language, so that respondents know just what they had to face. It also properly advised the court of the acts to be inquired into, and is, in my judgment, a sufficient foundation for the present proceeding. Moreover, if respondent should be found guilty of aiding or abetting, or confederating or acting in concert with, the named defendants, they come within the class of persons named in and enjoined by the injunctional order, and are therefore violators thereof, within the language of the decisions. They are in effect parties to the cause, at least in the same situation as a named party, so far as concerns a violation of the order, when they are informed of the injunction. Sloan v. People, 115 Ill. App. 64. The same rule is set out in the cases above cited and in People v. Marr (N. Y. Ct. App. May 30, 1905) 74 N. E. 431, 181 N. Y. 463; Anderson v. Indianapolis Drop Forging Co. (Ind. App., Nov. 22, 1904) 72 N. E. 277.

It was contended on the hearing that the case at bar was a criminal contempt, if any, and that respondents were entitled to be discharged on their sworn answers denying the acts charged in the petition. Such has been the rule at common law, but the practice has never obtained in equity. As far back as Blackstone's time it was the well-established rule that the answer of a respondent, in a proceeding for contempt in equity, was not conclusive, but might be traversed. 2 Blackstone's Com. 287, 288. In chancery the answer of a party charged with con-

tempt is not conclusive, and the truth of the answer may be examined into and disproved. Rapalje on Contempt, § 120, and cases cited. In the Matter of Debs (C. C.) 64 Fed. 738, Judge Woods held, citing a large number of authorities, to the effect that:

"In a proceeding for contempt in equity, a sworn answer, however full and unequivocal, is not conclusive."

And in the same case the court says, in answer to the proposition that in such proceeding the answer of a stranger to the suit is conclusive:

"I know of no authority and perceive no reason for treating the answer of a stranger to the bill as conclusive, while the answer of a party to the bill is not conclusive."

In the Matter of Christensen Engineering Company, 194 U. S. 458, 24 Sup. Ct. 729, 48 L. Ed. 1072, the court, speaking by Mr. Chief Justice Fuller, says of Ex parte Debs et al. that in that proceeding there was nothing of a remedial or compensatory nature. In re Savin, 131 U. S. 267, 9 Sup. Ct. 699, 33 L. Ed. 150, was a case wherein Savin was charged with contempt in attempting to deter a witness from testifying. He was found guilty of contempt, and sentenced to jail. A petition for a writ of habeas corpus was filed, and in discussing the case Mr. Justice Harlan says:

"It is, however, contended that the proceedings in the District Court were insufficient to give that court jurisdiction to render judgment. This contention is based mainly upon the refusal of the court to require service of interrogatories upon the appellant, so that, in answering them, he could purge himself of the contempt charged. The court could have adopted that mode of trying the question of contempt, but it was not bound to do so. It could, in its discretion, adopt such mode of determining that question as it deemed proper, provided due regard was had to the essential rules that obtain in the trial of matters of contempt."

Again, in the case of United States v. Anonymous, 21 Fed. 761, a case much quoted as an exhaustive study of the question, Judge Hammond says:

"But there never was in a court of equity, as at law, any rule that the answer of the respondent to interrogatories should be taken as true and he be discharged, if he denied the contempt."

This was a criminal contempt proceeding, and the court declined to treat respondent's answer as conclusive.

The present proceeding, while, as said by the Supreme Court in the Besette Case, it comes more fully within the punitive than the remedial class, is entitled in the main cause. It is heard upon a rule issued by the court sitting in equity in that cause. As above set out, it has been uniformly so treated by the federal courts. They have not indulged in nice distinctions which can serve neither court nor parties further than to make the practice in such cases indefinite and uncertain. The answers of respondents herein are not conclusive upon the court.

There remains the inquiry as to whether respondents were sufficiently advised of the terms of the injunctional order, and whether, having such knowledge, they willfully set at naught and defied the order

of the court. It was shown upon the hearing, and was a matter of common knowledge as well at the time, that complainant's wagons were placarded with printed copies of the order upon both sides. They also bore large signs notifying all persons that they were protected by the order. The daily press teemed with references thereto. Copies of the order were posted in public places. Indeed, such publicity has rarely been given similar orders. The wagons paraded the streets under armed guards. This of itself could not fail to direct attention to them. It is incredible that any person, other than infants and idiots, could fail to be in the immediate vicinity of complainant's wagons without knowing of the injunctional decree. Of all the parties brought before the court there is not one who can within reason be said to have been without full knowledge of the fact that, if he committed the acts complained of, he was defying the order of the court and obstructing the course of justice. The decree required defendants to desist and refrain from in any manner interfering with, hindering, obstructing, or stopping any of complainant's business in the maintenance and operation of its horses, wagons, and teams, and from interfering with, or obstructing or attempting to intimidate, any of its agents or employés in the transaction of its business. This cause is one of a number instituted in the several pending suits at about the same time for the purpose of punishing the several alleged wrongdoers. The petition in this case asks for a rule against 24 persons, which was granted.

There are so many persons involved in this and the other suits that it seems best to the court, at this time, to take up and dispose of that one which at the hearing seemed to be the most flagrant in character, both as to the acts alleged and the person of the alleged wrongdoer. This was the respondent Daniel Garrigan. He was duly served with the rule, and appeared in person and by counsel at the hearing. His answer sets up the several grounds upon which want of jurisdiction in the court for the purposes of this hearing is based, and traverses all and singular the charges made against him. The affidavits of a large number of witnesses were read on each side, which, as is usual in such controversies, were directly contradictory of each other. For the petitioner it was in substance deposed that complainant's two wagons were going north on Michigan avenue from Monroe street to 280 Michigan St., on the North Side, on May 2, 1905; that they bore in a conspicuous manner printed copies of the injunction order of the court, together with large placards calling attention to the order and the protection thereby afforded; that it was impossible for any one to see the wagons without seeing the placards and order; that an excited crowd or mob gathered about the teams; that threats of violence were made, and stones thrown at the wagons, teamsters and guards; that respondent Garrigan was among the most active of the advisers to violence, that he threw stones at the wagons, teamsters, and guards; that he was flitting from one position to another, dodging into doorways and throwing stones; that he used violent and incendiary language; that he violently assaulted one of the colored guards while the latter was in care of or charge of the police; and that all

this time he was dressed in the uniform, cap and all, of the Chicago City Fire Department. These charges he denies, except that he admits having been there, and that he followed the wagons over the said route. His witnesses, including several police officers, either deny that he committed said acts or that they saw him commit the same. In such irreconcilable conflict of testimony it is often impossible to get a clue to the truth. Such a clue, however, this case presents. The witnesses on both sides are mainly partisans of one side or the other. This is not true of the witnesses Dimmick and Evanson, both employés of Spaulding and Merrick, tobacco merchants at 271 Michigan street. Both of these witnesses impressed me as absolutely disinterested and thoroughly reliable. Their evidence directly implicates Garrigan in the unlawful and mob-like transactions of that occasion. Both saw him strike a colored guard when in the patrol wagon and unprotected. This was denied by certain police officers, but in view of the last-named evidence and of the course taken by the police in making no arrests from among the rioters, and other circumstances in the evidence, I deem their evidence inconclusive.

I therefore find the testimony of Garrigan is discredited. All things considered, I am left in no doubt as to Garrigan's action in the case. He willfully attacked and interfered with complainant's men, teams, wagons, and business. He attempted, by violence and harangue, to intimidate complainant's employés, and induce them not to continue in complainant's employment. All this he did when surrounded by an excited mob. He called the men names. He took every available means of demonstrating his sympathy with the striking teamsters and defendants to the suit, and his hatred of the men who had taken their places. He swept aside the order of the court as nothing, and beyond question knew just what he was doing. The basis of his motives was plainly disclosed in his conduct, namely, an intense desire to punish complainant and complainant's servants for attempting to transact their lawful business in defiance of the behest of the striking employés of complainant. He is a man of intelligence. He must have known the force of the injunctional order. What he did was plainly done in aiding and abetting the defendants named in the bill. That a conspiracy with them is not shown counts for nothing. Even though they had been discharged under the rule, he could still be held. Sloan v. People, supra. He both violated the injunction and obstructed the process of the court. I therefore find him guilty, and order that he be attached for contempt of court in so doing, and that he be confined in the county jail of Du Page county, Ill., located at Wheaton, for the term of three months, unless sooner discharged by due process of law. The cases of the other respondents are reserved for further order of the court.

Counsel for complainant may prepare said order in accordance herewith.