## The People of the State of Illinois, Defendant in Error, v. Robert McDonald, Plaintiff in Error.

### Gen. No. 29,131.

1. CONTEMPT—*assault on litigant in corridor of court room as direct contempt summarily triable.* Where a litigant in the Superior Court of Cook County upon leaving the court room after entering a motion on the motion book to be heard about an hour later when the court usually opened for the day, passed into the corridor where he was seized by plaintiff in error, an adverse litigant, and pushed into a toilet room where he was assaulted and beaten by plaintiff in error and two other men, the act constituted a direct contempt of the court which authorized the court to proceed without the filing of an information or affidavit specifying the nature of the charge and giving plaintiff in error an opportunity to make a formal answer thereto.

2. CONTEMPT—*assault on litigant in corridor of court room by adverse party as criminal assault.* An assault in the corridor of a court room by one litigant upon another for the purpose of intimidating the latter from proceeding with the litigation constituted a criminal contempt.

3. CONTEMPT—*sworn denial of contemnor as conclusive in criminal contempt.* In a criminal contempt committed in the presence of the court the answer of the contemnor in which he denies the charge, or his testimony under oath in open court denying the charge, is not necessarily conclusive.

4. CONTEMPT—*sufficiency of evidence in purgation in criminal contempt.* An assault by one litigant upon another in the corridors of the court a short time before the convening of the court was a criminal contempt to be considered as having been committed in the presence of the court and the contemnor's mere sworn denial of the charge did not prevent the court from finding under the conflicting evidence that he did commit the assault and from entering an order sentencing him to jail.

Error by defendant to the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the second division of this court for the first district at the March term, 1924. Affirmed. Opinion filed June 27, 1924.

WILLIAM H. HOLLY and JOHN L. WARD, for plaintiff in error; WILLIAM H. HOLLY, of counsel.

ROBERT E. CROWE, State's Attorney, EDWARD E. WILSON and CLYDE C. FISHER, Assistant State's Attorneys, for defendant in error.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This writ of error is sued out to reverse an order of the Superior Court of Cook County, entered December 21, 1923, wherein Robert McDonald, Superintendent of the Checker Taxi-Cab Co., was sentenced to jail for a period of sixty (60) days, unless sooner released by due process of law, for contempt of court.

It appears that there was pending a chancery cause, No. 390,156, in which Emanuel Goldstein and others were complainants, and the "International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers Union, Local 727," and Robert McDonald and others were defendants. About 9:10 o'clock on the morning of December 21st, Goldstein went into the court room of Judge Denis E. Sullivan, one of the judges of the superior court, for the purpose of entering a motion on the motion book to be heard at 10 o'clock a. m., when court was usually opened for the day. After Goldstein had entered the motion and had passed out of the court room into the corridor, he was grabbed by McDonald and pushed into a toilet room, less than fifty feet from the court-room door, where he was assaulted and beaten by McDonald and two other unknown men. His front teeth were knocked out and he was otherwise injured. He called loudly for help, whereupon several bailiffs came quickly into the corridor, where they saw McDonald standing against the wall, about six feet away from the toilet room, and two other men running hastily down a stairway. Upon Goldstein identifying McDonald as one of the men who had assaulted and beaten him, one of the bailiffs arrested McDonald, but the other two men were not apprehended. At the time of these occurrences Judge Sullivan was not

holding court in the court room, but was in his chambers adjoining, engaged in transacting court business. A deputy clerk and a bailiff were in the court room. Upon the judge ascending the bench at 10 o'clock a. m., the occurrences were immediately brought to his attention. Goldstein and his attorneys were present, as were McDonald and his attorney. A hearing was had, at which Goldstein, McDonald and three bailiffs were examined and cross-examined and arguments heard. McDonald denied that he had committed any assault or battery whatsoever on Goldstein. At the conclusion of the hearing the court entered the order in question. After making findings of fact substantially as above outlined the court further found that McDonald was in contempt of court by reason of his conduct, and that such conduct "was a direct contempt and was contumacious and clearly tended to obstruct the proper administration of justice in this court;" that McDonald "came to said court house for the purpose of assaulting said Goldstein"; and that "no justification or mitigation appears for his said conduct." Counsel for McDonald here urge two points as grounds for a reversal of the order.

It is first contended that the contempt, if any, was not a direct contempt (because not in the presence of the court) but was an indirect or constructive contempt, and that, hence, the court was not authorized to proceed without the filing of an information or affidavit specifying the nature of the charge and giving McDonald an opportunity to make a formal answer thereto. In 13 Corpus Juris, page 5, it is said: "Contempts of court may be direct, constructive, criminal, or civil. * * * A direct contempt is an open insult committed in the presence of the court to the person of the presiding judge, or a resistance or defiance in his presence to its powers or authority, or improper conduct so near to the court as to interrupt its proceedings. * * * A constructive con-

tempt is an act done, not in the presence of the court, but at a distance, which tends to belittle, to degrade, or to obstruct, interrupt, prevent, or embarrass the administration of justice.'' It is further said (13 C. J. p. 31): ''While direct contempt can only be committed in the presence of the court, or so near thereto as to obstruct the administration of justice, yet contempt in the presence of the court exists, if committed in any part of the place set apart for the use of its officers, jurors, and witnesses, including the hallways of the courthouse, the steps, or the courthouse yard.'' In 9 Cyc. p. 19, it is said: ''Insolent conduct directed toward the court or judge constituting contempt must also occur while the court or judge is engaged in the discharge of a judicial duty. The court is present, however, in every part of the place set apart for its use and for the use of its officers, jurors, and witnesses, and therefore misbehavior in such places is misconduct in the presence of the court.'' In one of the early cases in this State (*Stuart v. People,* 3 Scam. (Ill.) 395) our Supreme Court, referring to the right of a court to punish for contempts committed in its presence, said (p. 405): ''In this power would necessarily be included all acts calculated to impede, embarrass, or obstruct the Court in the administration of justice. Such acts would be considered as done in the presence of the court.'' (See also *People v. Wilson,* 64 Ill. 195, 211; *Dahnke v. People,* 168 Ill. 102, 106.) In 13 Corpus Juris, page 63, it is further said: ''It is the almost universal rule that, where the contempt is direct, in the immediate presence of the court, summary punishment may be inflicted, without affidavit, notice, rule to show cause, or other process. * * * It seems that the court may adopt such mode of trying the question of contempt as it deems proper, only so that the person charged may be given an opportunity for explanation and defense.'' (Citing *In re Savin,* 131 U. S. 267.) In *Tolman v. Jones,* 114 Ill. 147, 153, Tolman refused to execute

a formal assignment before a master in chancery of property to a receiver in pursuance of a previous order of the court; upon the matter being reported to the court, he and his counsel were present and made no objection to the proceeding and they were given a full hearing; he was again ordered by the court to make the assignment and he again refused to do so, whereupon he was ordered committed to jail for contempt; it was *held* that such commitment was justified, notwithstanding no rule had been entered on him to show cause why he should not be committed. In *People v. Cochrane,* 307 Ill. 126, Cochrane was a witness before the grand jury and refused to answer questions. Thereupon he, with the grand jury and the State's Attorney, went before the court and was given an opportunity to say whether he would answer the questions. He again refused and was sentenced to jail for contempt without any preliminary affidavit, process or interrogatory. In affirming the judgment our Supreme Court said (p. 131): "A contempt committed in any place set apart for the use of any constituent part of the court during the session of the court is committed in the presence of the court. * * * Presence of the court means in the ocular view of the court or where the court has direct knowledge of the contempt, and even if the plaintiff in error had been adjudged guilty of contempt for his refusal to answer questions before the grand jury, it would have been in the presence of the court." And the court quoted with approval what was said in the case of *People ex rel. Choate v. Barrett,* 56 Hun (N. Y.) 351, 352, where a newspaper reporter concealed himself in a jury room during the deliberations of the jury, viz: "The judge is not the court; the court room is not the court; the jury room is not the court; nor is the petit jury the court. But the court consists of all these combined; and wherever any constituent part of the court is engaged in the prosecution of the business of the court according to law, there the court is

present.'' And the court in its opinion cited the case of *In re Savin,* 131 U. S. 267, 276, where it was held that an attempt to bribe a government witness in a room used by witnesses and also in a hall of the courthouse was a contempt committed in the presence of the court; and also cited the case of *McCarthy v. Hugo,* 82 Conn. 262, 264, wherein it appeared that McCarthy, who was being prosecuted for a violation of the liquor law, took from the lawyer's table in the court room a bottle of whisky alleged to have been sold to him and which had been produced in court as an exhibit, and left in its place a bottle of ginger ale during a recess of the court and while the judge was in his retiring room, and wherein it was held that McCarthy's act constituted a criminal contempt committed in the presence of the court. In *Dahnke v. People,* 168 Ill. 102, Dahnke was the custodian of the courthouse of Cook county, appointed by the board of county commissioners. Judge Freeman was hearing a chancery case in one of the court rooms. In the interval between a temporary adjournment of court on the evening of November 5, 1894, until the morning of November 7th, Dahnke, acting under orders of said board, changed the locks on the doors of the court room, and refused to allow the judge or the other court officials, or the parties, or their attorneys and witnesses, to enter the room. After he had filed answers to certain interrogatories, he was adjudged guilty of contempt and fined. In affirming the judgment our Supreme Court *held* that there was not a sufficient justification for Dahnke's acts and that they were a direct contempt. In the opinion, after referring to the above quoted language in the *Stuart* case, *supra,* it is said (p. 106): ''The conduct of plaintiff in error was certainly such as was calculated to obstruct the court in the administration of justice. * * * It is true, that the acts of the plaintiff in error were not performed while the court was actually in session, but, having been performed dur-

ing the brief adjournment of the court from one ses-
sion to another, and having had the effect of prevent-
ing the judge of the court from gaining access to his
court room, they may be regarded as being so near
to the court as to interrupt its proceedings.    *    *    *
Contempt of court is a despising of the authority, jus-
tice or dignity of the court.    *    *    *    'Any conduct,
which is calculated to interfere with the proceedings
by assaulting litigants or witnesses within the pre-
cincts of the court, or preventing or hindering, or en-
deavoring to prevent or hinder them in their access
to the court or otherwise, is a contempt.' ''    The
*Dahnke* case was cited with approval in *People v.
Gard,* 259 Ill. 238, 242, where it is said: ''Conduct
which tends to embarrass or obstruct the court in
the administration of justice, or which tends to bring
the administration of the law into disrespect or dis-
regard, constitutes a direct contempt and is punish-
able as such.''    Reference may also be made to the
case of *People v. Jackson,* 178 Ill. App. 121, wherein
it was held that one who induces an important wit-
ness, then in a hallway adjoining the court room and
waiting to testify as soon as the case should be put
on trial, to go into a saloon, take an automobile ride
and stay away from the courthouse, is guilty of a
direct contempt committed in the presence of the
court; and to the case of *Fisher v. McDaniel,* 9 Wyo.
457, wherein it appeared that an attempt to influence
a witness occurred in the hall of the courthouse, and
it was held that this was a contempt committed in the
court's presence.

In view of the foregoing authorities, and of the
facts of the present case as above outlined, we are of
the opinion that the court was fully warranted in
entering the contempt order in question, without the
filing of any preliminary information, affidavit or in-
terrogatories, and without allowing McDonald to file
a formal answer thereto.   During the hearing in open
court, which followed shortly after the occurrences,

McDonald was represented by counsel and testified.
He did not at the commencement of the hearing or
during its progress ask that an information or affi-
davit be filed against him or that he be allowed to
file a formal answer to the charge. He was, however,
given full opportunity for explanation and defense.
He did not satisfactorily explain why he, as superin-
tendent of the taxi-cab company, was present in the
corridor at the particular place and at the particular
time, which was about 50 minutes before the court
usually heard motions and commenced calling cases.
It is unquestioned that Goldstein, a party complainant
in a pending litigation in which McDonald was a
defendant, was brutally assaulted. And the evident
purpose of the assault was to intimidate Goldstein
and endeavor to prevent, if possible, the further
prosecution by him of the cause. The assault was
calculated to impede or obstruct the court in the
administration of justice and was a direct contempt
of court. Because of the strong evidence to the con-
trary, the court evidently did not believe McDonald's
statements that he was not in the toilet-room, heard
no noises, did not at any time strike Goldstein, or
"offer any violence to anybody."

It is secondly contended that, inasmuch as the con-
tempt is a criminal and not a civil contempt, and as
McDonald purged himself by his testimony wherein
he denied committing the assault in question, the
court had no authority to adjudge him guilty of con-
tempt. In *Holbrook v. Ford,* 153 Ill. 633, 647, it is
said: "Contempts have been still further classified
into criminal and civil, the former being acts in dis-
respect of the court or its process, or tending to bring
it into disrepute, or obstruct the administration of
justice; the latter being 'those *quasi* contempts which
consist in failing to do something which the contem-
nor is ordered by the court to do for the benefit or
advantage of another party to the proceeding before
the court.'" (See also *People v. Diedrich,* 141 Ill.

665, 669; *People v. Elbert*, 287 Ill. 458, 463.) Clearly, the contempt in the present case must be considered as a criminal contempt. In *Oster v. People*, 192 Ill. 473, 479, it is said: "In criminal contempts alleged to have been committed out of the presence of the court, if the contemnor's answer is sufficient to acquit of the charge he must be discharged." (Citing cases.) In *People v. Seymour*, 272 Ill. 295, 301, it is said:

"In a case where the proceeding for contempt is for acts committed, not in the presence of the court and not in furtherance of the remedy sought in a suit or in enforcement of the orders or decrees of the court but to maintain the authority of the court and uphold the administration of justice, if the party should answer denying the alleged wrongful acts his answer is conclusive and he is entitled to his discharge." (Citing cases.) "If, on the other hand, the answer admits the material facts charged to be true and the facts constitute a contempt of court, punishment is imposed upon the answer. In either case no issue of fact is or can be formed. The defendant determines, by his own answer under oath, whether he is guilty of that which is charged against him as a contempt of court, and if he fail thereby to purge himself the court may at once impose the punishment. (*Storey v. People*, 79 Ill. 45.)"

As we understand the law of this State, as disclosed from the cases cited, if the charge against the contemnor is a criminal contempt, committed *in the presence of the court,* his formal sworn answer in which he denies the charge, or his testimony under oath in open court denying the charge (*People v. Hille*, 192 Ill. App. 139, 151), is not necessarily conclusive. As the present contempt is to be considered as one committed in the court's presence we do not think that McDonald's mere sworn denial of the charge prevented the court from finding under the conflicting evidence that he did commit the assault and from

entering the order in question. Furthermore, his entire testimony did not sufficiently purge him.

Our conclusion is that the order of the superior court should be affirmed and it is so ordered.

*Affirmed.*

FITCH, P. J., and BARNES, J., concur.